## Case No. 11,004.

PERRY v. CORNING et al.

[7 Blatchf. 195.][1]

Circuit Court, N. D. New York. March, 1870.

PATENTS — SUIT BY ASSIGNEE FOR INFRINGEMENT —UNRECORDED ASSIGNMENT—DISCOVERY AND ACCOUNTING—EQUITY.

1. Where a patentee assigns all his right, title and interest in his invention and patent within and throughout a specified territory, this is such a grant of exclusive right as warrants a suit in the name of the grantee for an infringement within such territory.

2. The omission to record such an instrument in the patent office within three months from the execution thereof, does not render it invalid, as between the parties thereto.

3. Such an instrument, if unrecorded, is of no validity, after the expiration of the three months, as against a subsequent purchaser from the patentee, for a valuable consideration, acting in good faith, without notice.

4. Whether, if such an instrument be not recorded within the three months, an assignment afterwards made would prevail, although received with notice of the prior instrument, quere.

5. A plaintiff who claims title through such an instrument, and sues in equity for an infringement of the patent, need not aver in his bill the recording of the instrument, but may treat the defendant as a wrongdoer and put him to set up in his answer that he is a bona fide purchaser for value, without notice.

[Cited in Empire State Nail Co. v. Faulkner, 55 Fed. 822.]

6. Where a bill in equity for the infringement of a patent prays for a discovery and an account of profits, and alleges that the plaintiff has no adequate remedy except in equity, it is not demurrable on the ground that the plaintiff has an adequate remedy at law.

7. This court, as a court of equity, has a full concurrent jurisdiction with the circuit court, as a court of law, of all actions for the infringement of a patent. But, whether, as a court of equity, it can or will award damages irrespective

of the gains and profits accrued to the defendant from the infringement, or in addition to such gains and profits, quere.

[Cited in Atwood v. Portland Co., 10 Fed. 285.]

8. Where T. transferred to S. all his right, title and interest in a patent, and subsequently transferred to D. all his right, title and interest in the same patent, and subsequently S. retransferred to T. all the interest T. had conveyed to him: Held, that D. acquired nothing by the transfer to him, and that such retransfer to T. did not enure to the benefit of D., so as to perfect his title.

This was a demurrer to a bill in equity. The bill alleged, that one Dennis G. Littlefield was the inventor of an improvement in stoves and received letters patent [No. 8,047] therefor, dated April 15th, 1851; that he made a further improvement, called a "supplying cylinder," for which he received letters patent December 30th, 1852; that, on the 5th of April, 1853, he entered into a contract with the firm of Treadwell & Perry, whereby he "did assign and transfer to the said firm of Treadwell & Perry all the right, title and interest which the said Littlefield possessed, and which he might thereafter possess, to the aforesaid invention, improvement or patent, or the patent or patents that might be granted for said inventions or any improvements therein, and in any extension or extensions thereof, within and throughout the district and territory embraced within the states of New York and Connecticut, for and during the term for which the aforesaid letters patent were granted, and the terms for which any patent for the aforesaid improvement, and any other improvement or improvements thereof, or extensions for or of either thereof, might be granted, either to the said party of the first part, or his heirs, executors, administrators or assigns, to manufacture and sell the same within the states of New York and Connecticut." There was no averment that that instrument had been at any time recorded in the patent office of the United States. The bill then set out a further agreement between Littlefield and Treadwell & Perry, dated September 10th, 1853, by which Littlefield sold, assigned, &c., to Treadwell & Perry, their executors, administrators, and successors in business, "the exclusive right to make, use and vend a certain invention of a coal-burner, embraced within certain letters patent of the United States granted to him, bearing date the 15th day of April, 1851, and all improvements therein made or which may hereafter be made, within and throughout the whole United States," except Lowell, Massachusetts, for and during the term or terms for which any patents therefor had already been or might be thereafter issued, and for and during any extensions thereof which might be granted either to the said Littlefield or to his heirs, &c., as applied to stationary and hot air furnaces. Then followed a guaranty to Treadwell & Perry of the full and uninterrupted enjoyment of the said use, as applied to hot air furnaces, as

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

against all persons in the United States, except in Lowell, and an agreement by Littlefield to defend any suit or suits which might be brought against Treadwell & Perry, affecting the validity of the said patent, or for any alleged violation of any previous patent by the use and enjoyment of the rights therein conveyed to them, and to save them harmless, and to prosecute, when required by them, all persons who should infringe the patent or patents. In consideration thereof, Treadwell & Perry agreed to make and sell furnaces embracing such coal burner, to advertise, &c., to bring them into use, and to pay him ten per cent. of the amount of their sales of said furnaces embracing the said invention. Then followed some other provisions relating solely to such air-furnaces, and providing for the contingency that the aforesaid furnaces should be found not to answer the purpose. This instrument was recorded in the patent office. The bill alleged, that, by that and the prior assignment, the sole and exclusive right to the whole interest in the letters patent aforesaid, and all improvements thereon and extensions thereof, became vested in Treadwell & Perry. It then continued: "And your orator avers, that he has succeeded to, and is now vested with, all their legal and equitable rights." The bill then set out numerous reissues and patents for further improvements made and procured by Littlefield. It then averred, that Treadwell & Perry sold and transferred to one George W. Sterling all their interest in the before-mentioned contracts and patents and improvements, by assignment dated March 5th, 1862, and recorded May 31st. 1862; that, on the 7th of April, 1862, the said Treadwell & Perry assigned all their interest in the said contracts and patents to one Andrew Dickey, by assignment recorded June 26th, 1862; that, on the last-named day, by assignment recorded on the same day, Sterling assigned to Treadwell & Perry all the interest they had transferred to him; and that, on the 2d of July, 1862, Dickey assigned all his interest to Mary J. Perry, by an assignment which was recorded July 29th, 1862. Of these several assignments the plaintiff [John H. Perry, trustee and executor] made profert. Then followed this averment: "And your orator further shows unto your honors, that, in or about the month of August, 1862, Mary J. Perry, of, &c., had, by legal assignment, become and was then vested with all the legal rights in said letters patent which, by the agreements and assignments hereinbefore referred to, had been transferred to the said Treadwell & Perry, and then, as your orator avers, had the exclusive right to practise the inventions and improvements secured thereby within the states of New York and Connecticut." The bill then averred, that Mary J. Perry thereupon, filed a bill against Littlefield and Ira Jagger, in this court, alleging infringement by them and praying damages. It then set forth proceedings in

that suit, including a revival of it, on the death of Mary J. Perry, in the name of the plaintiff, as trustee and executor, and a decree affirming that, by virtue of the agreement of April 5th, 1853, Mary J. Perry was, and the plaintiff, as trustee and executor, had become, vested with the exclusive right, within the states of New York and Connecticut, of making, using and vending stoves embracing the improvements mentioned in the several letters patent referred to, awarding to the plaintiff all the gains, &c., which had arisen or accrued to the defendants in that suit, and directing an account to be taken by one of the masters of this court. The only further statement in the bill, which is material to the points raised by the demurrer, was this: "that the said defendants, Erastus Corning, Erastus Corning, Jr., and Gilbert C. Davidson, were, at the times hereinafter mentioned. co-partners in business in the city of Albany and state of New York, under the firm name and style of Erastus Corning & Company; that, some time between the first day of January, 1861, and the first day of January, 1863, said defendants, as such firm of Erastus Corning & Company, entered into a certain contract or agreement with the said Dennis G. Littlefield, whereby the said defendants were to manufacture and sell, within the states of New York and Connecticut, certain stoves containing some or all of the inventions and improvements secured to the said Littlefield by virtue of the several letters patent and re-issues of the same herein before-mentioned and referred to," and that "the defendants proceeded to manufacture and sell, and did manufacture and sell, within the territory aforesaid, stoves of the patents and re-issues of patents as herein before-mentioned." It then avers great gains, &c., by the defendants and prays an account and the payment thereof by the defendants, as damages for their infringement of the plaintiff's rights.

The defendants demurred to the bill, assigning various special grounds of demurrer. The two grounds mainly relied upon were: (1) That it appeared, by the bill, that Mary J. Perry had no title to the patent, invention or improvements claimed, nor had the plaintiff, as her trustee or executor, because, on the 7th of April, 1862, when Treadwell & Perry assigned to her assignor, Dickey, they had no right, title, or interest therein, which they could assign, they having already, on the 5th of March, 1862, assigned all their interest to Sterling, who then held the same; and (2) that the alleged transfer of the patent or exclusive right by Littlefield to Treadwell & Perry, on the 5th of April, 1853, under alone they or the plaintiff could claim the exclusive right to make or use the invention in the manufacture of stoves, and which was the only right which the defendants were charged with infringing, was of no validity as against the defendants, and could warrant no suit against them. because it had not been recorded in the patent office.

John H. Reynolds, for plaintiff.
Amasa J. Parker, for defendants.

WOODRUFF, Circuit Judge. The charge made against the defendants in the bill is, that they have manufactured and sold, within the states of New York and Connecticut, stoves containing some or all of certain inventions and improvements secured by letters patent issued to Dennis G. Littlefield. The title of the plaintiff is derived through an instrument executed by the patentee, Littlefield, by which, as alleged in the bill, he assigned and transferred to the firm of Treadwell & Perry all the right, title and interest of Littlefield in the invention, patent and patents in question, and in any extension thereof and any improvements thereon and any patents that might be granted therefor, "within and throughout the district or territory embraced within the states of New York and Connecticut." The terms of this instrument, as more fully set forth in the bill, import an absolute sale and transfer of the patents, inventions and improvements, for a valuable consideration, but only so far as relates to a specified territory or district. As to such district, the assignment is unqualified, and, ex vi termini, excludes the patentee from any interest in or control over the rights secured by the letters patent. Such an instrument, if not technically an assignment of the patent or an undivided part thereof, is a grant of the exclusive right under the patent to use, and to grant to others to make and use, the thing patented within and throughout a specified part of the United States, and warrants a suit in the name of the grantee or assignee, for an infringement within the territory named. Act July 4, 1836, §§ 11, 14 (5 Stat. 121, 123); Brooks v. Byam [Case No. 1,948]; Gibson v. Cook [Id. 5,393]; Potter v. Holland [Id. 11,329]; Gayler v. Wilder, 10 How. [51 U. S.] 477, 494. As to such instrument, the act of congress provides explicitly, that it "shall be recorded in the patent office within three months from the execution thereof." The meaning and effect of this provision must be regarded as settled to this extent, at least, namely: (1) The omission to record the instrument within three months does not render it invalid, as between the parties thereto; (2) the unrecorded instrument is of no validity, after the expiration of three months, as against a subsequent purchaser from the patentee, for a valuable consideration, acting in good faith, without notice. Brooks v. Byam [supra]; Pitts v. Whitman [Case No. 11,196]; Blanchard's Gun-Stock Turning Factory v. Warner [Id. 1,521]; Gibson v. Cook [supra]; Potter v. Holland [supra]; Boyd v. McAlpin [Case No. 1,748]; Case v. Redfield [Id. 2,494]. Mr. Justice McLean, in Boyd v. McAlpin, expresses the opinion, that, if an assignment be not recorded within three months, an assignment afterwards made would prevail, although received with notice of such prior assignment.

But this dictum was not material to the point decided, namely, that, as against a mere wrongdoer, the assignment was valid though not recorded; and it is not in harmony with other cases. And the language of the court in Brooks v. Byam [supra], and Pitts v. Whitman [supra], seems to import that, although such unrecorded assignment is not void, no suit can be maintained, and no recovery be had, against any third person by virtue thereof, unless it be recorded before or pending the suit. This, however, is inconsistent with the case of Boyd v. McAlpin [supra], and is not, I think, to be regarded as settled.

For the purposes of the present case, it is not material to discuss either of these last-named points. It is sufficient to say, that, as against a purchaser in good faith, for value, without notice of any prior assignment, an assignment not recorded within the time limited in the act is not valid, and will not affect his rights acquired from the patentee before such record is made; and that, on the other hand, the instrument, though not recorded, is a perfectly valid instrument, and effectual according to its purport, as against the assignor and all others except third persons who, in good faith, for value, without notice, become purchasers or acquire rights or interests in or under the patent. The plaintiff here has, therefore, set out an assignment which was sufficient to vest the title in Treadwell & Perry. He had a right, as matter of pleading, to treat the defendants as wrongdoers, and put them to set up in their answer that they were bona fide purchasers for value, without notice, or that, in like good faith, they entered into the agreement with the patentee and assignor, by which they acquired the right to use the patent.

I do not perceive the materiality or pertinency of the agreement of September, 1853, by which Treadwell & Perry were given the exclusive right to use the invention, as applied to hot air furnaces, throughout the United States. Though recorded, it gave no notice of their right to use it for the manufacture of stoves in New York and Connecticut; and it is for making stoves that the defendants are sought to be charged. It contains no reference to the prior agreement. I have carefully considered the claim of the defendants' counsel, most earnestly insisted upon, that the instrument of the 5th of April, 1853, is not only not an assignment of the whole or of an undivided part of the patent, but is not even a grant of the exclusive right to make and use, and to grant to others to make and use, within the act of congress requiring such assignments and grants to be recorded, and authorizing suits in the name of the assignee or grantee of the exclusive right above referred to. Although the instrument does not employ the terms, "to grant to others to make and use" the invention, &c., I think its just construction fully excludes the patentee from all interest in, or control over, the invention, or the manufacture or use of

the thing patented, within the specified territory, and so excludes him from any right to confer the privilege upon any others. He assigns all his right, title and interest in the invention, improvement or patent, within and throughout the two states mentioned, for the term of the patent, and the terms of any patent for the same or other improvements thereof, or any extensions for or of either thereof, which might be granted to the assignor, or his heirs, executors, administrators or assigns, to manufacture and sell the same within the states of New York and Connecticut. This transfers the whole interest of the patentee in those states; and the concluding words of the granting clause do not restrict the grantees to the manufacture in their own persons. They are descriptive of the future and other improvements and extensions which might thereafter be granted to the patentee, to manufacture and sell in New York and Connecticut, and are not limitations or qualifications of the full right, title and interest in the invention and its use, previously therein granted. That the assignment gave to Treadwell & Perry the entire monopoly which the patentee before had in those states, and to the exclusion of the patentee himself, is, I think, quite certain; and this is made the test of the right to sue, in Gayler v. Wilder, 10 How. [51 U. S.] 477, 494, by Chief Justice Taney.

As to the objection that the plaintiff has an adequate remedy at law, it might suffice to say, that this objection was overruled in this court on the former demurrer herein, and no sufficient reason exists for reconsidering that determination made before I became a member of the court. But I am clearly of opinion, that, under the 17th section of the act of July 4th, 1836 (5 Stat. 124), a party is at liberty to select his forum, although he seeks a recovery of money only, and neither seeks nor requires a discovery or other ancillary or further relief. No language could be employed to declare the jurisdiction of the courts at law and in equity more completely concurrent than is there found, or which would more clearly indicate that the party aggrieved may resort to either. Holding the jurisdiction of the subject-matter to be concurrent does not, however, necessarily imply that the measure of relief or recovery will be the same in either court. At law, the plaintiff recovers damages, as such, and the plaintiff must prove the damages sustained by him from the infringement. In equity, the plaintiff may seek and may require an account of the gains and profits derived by the defendant from the unlawful infringement, and these gains and profits he may recover. This is what the plaintiff here prays, and his prayer, in this respect, is not prejudiced because he says that those gains and profits are the damages which he has suffered. The question whether a plaintiff can in equity recover damages, as such, irrespective of the gains

and profits derived by the defendant from the unlawful use of the plaintiff's invention, does not arise on this demurrer. That question appertains to the measure or quality of the relief which may be granted in the courts respectively, and not to the jurisdiction of either court to entertain the subject and give the relief, whatever it may be, which it is competent to give, according to the principles governing it, when its jurisdiction is duly invoked.

The objection that the plaintiff fails to show title under the assignment to Treadwell & Perry seems to me well taken. At the date of the transfer by Treadwell & Perry to Dickey, April 7th, 1862, under which transfer the plaintiff now claims title, they had, so far as is disclosed by the bill, no right, title or interest in the patent, which they could transfer. They had already, March 5th, 1862, transferred all their right, title and interest to Sterling, and Dickey, therefore, took nothing by their transfer to him. The bill alleges that, on the 26th of June, 1862, Sterling assigned and transferred to Treadwell & Perry all the interest they had transferred to him on the 5th of March, 1862; and the plaintiff insists that this last-named transfer enured to the benefit of Dickey, and so perfected his title, and the brief seems to intimate that Mr. Justice Nelson has so held in the case of Perry v. Littlefield [case unreported]. I should hesitate in holding the contrary in respect to the title of the same plaintiff, if, upon the same facts, and on consideration of the same question, that learned and greatly esteemed judge, and my senior in this circuit, has pronounced the plaintiff's title good. But, neither the pleadings nor the proofs nor his opinion are submitted to me. Upon the best consideration I have been able to give to the question, I am not able to perceive how Dickey acquired title, upon the mere facts alleged in this bill. It would be easy to suggest not only a possibility, but even a probability, that he did so, by supposing facts which are quite probable and yet are not averred; and, it is quite possible that such facts were proved in the case before Mr. Justice Nelson. Thus, it does appear that the transfer from Sterling to Treadwell & Perry, though dated June 26th, 1862, more than two months after the date of their transfer to Dickey, was recorded at the same time with the latter. Now it is quite possible that they were delivered at the same time, and that Dickey, aware of the outstanding title of Sterling, did not accept the transfer of April 7th, 1862, until the retransfer by Sterling to Treadwell & Perry was obtained; or, the nature of Sterling's interest may have been such that it had, in equity, wholly ceased at the time when the transfer to Dickey was made; or, there may be other facts and reasons why Dickey acquired the whole equitable, if not legal, title, both as to Sterling and Treadwell & Perry, notwithstanding the retrans-

fer had not then been made. But this bill cannot be aided by indulging in such conjectures. The case must be dealt with as the plaintiff has stated it; and, on the face of his statement, the title was in Sterling and did not pass by the assignment to Dickey.

There is no 'question here as to the effect of an after acquired title upon the rights of an assignor or his assignee, where the former has warranted the title which he transfers. No warranty is here alleged. Nor, if the implied warranty of title which has been held to arise in favor of the purchaser on the sale of a chattel, would operate as an estoppel, and so secure to the purchaser a title subsequently acquired by the vendor, will such implied warranty aid the plaintiff here. This was a mere assignment of the right, title and interest of Treadwell & Perry. As alleged in the bill, it was that and nothing else; and no facts, in respect of consideration, or otherwise, are stated, which would have made it inequitable in Treadwell & Perry to set up a title afterwards acquired, even against Dickey. Nor is the case in this respect aided by the decree which is set out in the bill, and which purports to establish the title of the plaintiff as trustee. It unquestionably has that effect as between the plaintiff and Littlefield and Jagger, the defendants in that suit; and, as against persons claiming under them by title subsequently acquired, it may have such effect. But it is not even averred in the bill that that suit was commenced before these defendants acquired from Littlefield the right to manufacture. They were not parties to that litigation, and neither on the ground of notice by lis pendens, nor otherwise, can they be affected by a suit commenced after their rights accrued. Upon the ground, therefore, that it is not shown by the bill that the rights and interests of Treadwell & Perry under the assignment of April 5th. 1853, were, either at law or in equity, vested in Mary J. Perry, under whose will the plaintiff claims as trustee, I conclude that the bill is defective. I do not overlook the general averments of title in Mary J. Perry and in the plaintiff. They are not, in the connection in which they stand, independent allegations of facts, but inferences or averments by way of giving construction to the facts which are alleged, or declarations of the legal effect of the facts stated. Judgment should be ordered for the defendants on the demurrer, with leave to the plaintiff to amend, on payment of the costs of the demurrer.

HALL, District Judge. I concur. I also suggest, that the bill does not contain any sufficient averment of the infringement of the patent, after the time when it is alleged that the right of Mrs. Perry accrued. The bill states the assignment to her to have been made on the 2d day of July, 1862, and only alleges that the infringement was after the

making of the contract between the defendants and Littlefield, which it is averred was "entered into" some time between January 1st, 1861, and January 1st, 1863.

[For other case involving this patent, see note to Perry v. Littlefield, Case No. 11,008. See, also, Same v. Corning, Id. 11,003, and Same v. Starrett, Id. 11,012.]