EMPIRE STATE NAIL CO. v. FAULKNER et al.

(Circuit Court, S. D. New York. May 13, 1893.)

1. PATENTS FOR INVENTIONS—ASSIGNMENT—EVIDENCE—AGENCY.
   In a suit for the infringement of a patent the defense was that the alleged infringer, the A. Company, was the equitable owner of the patent in suit. In support of this it showed an agreement between it and the son of the patentee, who claimed to be the patentee's agent, that he should disclose and transfer to the A. Company all the secrets and patent or other rights relating to the manufacture in question which were owned or controlled by him. There was nothing but the son's own declarations to show that he was such agent, and he was shown to be utterly untrustworthy; and the agreement made no express reference to either the patent in suit or the patentee. *Held*, that the A. Company acquired no title to the patent by virtue of this transaction.

2. SAME—BONA FIDE PURCHASERS—ESTOPPEL.
   After this agreement, the son, by assignment, became owner of a half interest in the patent, and the A. Company claimed that under and by

virtue of the prior agreement it became the equitable owner of this interest. Complainant had by regular and duly-recorded assignments acquired title to the whole patent. *Held*, that the A. Company, having failed to notify complainant of the interest claimed by it, though it knew that he was negotiating for the patent, and had some communication with him in regard thereto, is estopped to set up such interest, more especially in view of the fact that during the time when, as it claims, it held such interest, it was contesting the very patent in interference proceedings in the patent office.

3. SAME—LICENSE.

The A. Company also claimed in defense an irrevocable license to manufacture the patented article by virtue of an alleged sale to it by the patentee of a machine invented by him for that purpose. But it was not shown that the articles alleged to be an infringement were made on such machine, and it did appear that the machine got broken, and could not now be found. *Held*, that on these facts no question of license could arise.

In Equity. Suit by the Empire State Nail Company against Edward H., Edward D., and Francis E. Faulkner, for infringement of a patent. Decree for complainant.

Witter & Kenyon, for complainant.
Geo. B. Ashley, for defendants.

TOWNSEND, District Judge. This is a complaint for infringement of letters patent No. 370,614, granted September 27, 1887, to Thomas F. N. Finch, for an improvement in furniture nails, with prayer for an injunction and accounting. It is conceded that the nails sold by defendants were manufactured by the American Solid Leather Button Company of Rhode Island, which I will hereafter call the American Company, and that they are the same as those made by complainant. The defendants claim—First, that the American Company is the equitable owner of the patent in suit; second, that, even if said company is not such equitable owner, yet that it has an irrevocable license to manufacture and sell the patented article.

The facts in the case are as follows: On April 25, 1881, Charles E. Bailey and William R. Talbot, who are now respectively president and treasurer of said American Company, applied for a patent for an invention substantially the same as that embraced in the patent in suit. A patent was granted to them October 18, 1881. When Thomas F. N. Finch made his application on November 2, 1881, it and said patent were put in interference, and a contest ensued, which lasted several years, and which was finally decided in favor of said Thomas Finch. During the hearing therein the American Company claimed that there had been a prior public use of said invention. This question also was finally decided in favor of Thomas Finch. As a result of these delays the letters patent were not granted until September 27, 1887. On February 21, 1882, said Thomas Finch made an assignment of his interest in said patent, and, after various assignments, the complainant acquired the legal title thereto on November 20, 1888.

The grounds on which defendants claim that the American Company is the equitable owner of said patent are as follows: It appears that in 1880 Latimer Finch, a son of the patentee, was in this

country, trying to establish the manufacture of solid leather buttons, such as his father was making in England. He met said Bailey and Talbot, and represented to them that he controlled all his father's interests in this invention. A contract was made on February 1, 1881, between Latimer Finch and said Bailey and Talbot and one Prentice, wherein said Latimer claimed "to own or control the business and certain knowledge, secrets, patent, registry, or other rights connected with the manufacture of solid leather buttons," and, in consideration of the formation of a company to carry on said manufacture, agreed "that the said party of the first part (Latimer Finch) will at once turn over to said parties of the third and fourth parts all the information, secrets, patent, registry, or other rights connected with said business or manufacture which he may now, or may at any time hereafter, own, control, or come into possession of, and that he will disclose to said parties of the third and fourth parts, and to them only, all of the processes connected with the said manufacture." Latimer Finch further agreed to supervise the business of the company. The American Company was thereupon formed, and Latimer stayed with it for about 30 days, when he left, and engaged in business with a competing firm. On January 26, 1881, Thomas Finch shipped to said Prentice, one of the parties to the above agreement, a press for making furniture nails, which was afterwards transferred to the American Company. The price of the press, $19.36, was paid to Latimer Finch, and he, claiming to act on behalf of his father, gave a receipt therefor. In 1882, Latimer sold out all his interests to the American Company. In 1884 the American Company brought suit in the supreme court of Rhode Island, and obtained an injunction restraining Latimer from disclosing any information connected with the business of manufacturing solid leather nails, etc., mentioned in said agreement, and from violating any of the terms of said agreement. Among the intermediate assignments of the patent in suit was one whereby Latimer, in 1884, acquired an undivided half interest therein.

Defendants claim that, under the agreement of February, 1881, they acquired either an equitable title to the patent from Thomas Finch, through Latimer Finch, his agent, or to the interest therein, acquired by Latimer in 1884. The objection to the first claim is that there is no evidence to show that Latimer Finch was the agent of his father to transfer the title to the patent, other than the declarations of Latimer Finch, and the sale of the machine to Prentice. That Latimer Finch made representations to that effect, and that the parties made the agreement on the faith of such representations, is not denied; but he is shown to have been utterly untrustworthy, and guilty of bad faith, and gross breaches of contract. The agreement of February, 1881, does not mention or refer to Thomas Finch, and there is no evidence that he ever communicated with the parties thereto. The sale of the machine to Prentice was not a ratification of Latimer's agency in making the February contract, for it was prior to it. The only testimony of Thomas Finch

on this point is that he sent a press to the United States, which was prepared at his works, and was sent by another son to Latimer. In a deposition of Thomas Finch, in another suit against different parties, he says that he first introduced these nails into the United States in 1880; that his son Latimer took them and introduced them. This deposition was put in evidence against the objection of counsel for complainant. It does not seem to be admissible, inasmuch as the witness was examined in this cause. Even if it were admitted, the evidence would not be sufficient to show the authority of Latimer to bind Thomas Finch as to the disposition to be made of his inventions, or to dispose of a patent subsequently applied for by Thomas Finch. The act of Thomas Finch in so applying for a patent in November, 1881, his subsequent assignment of the patent, and his proceedings in the interference suits against Bailey and Talbot, lasting some five years, support the view that he neither authorized nor ratified the act of Latimer in attempting to dispose of his patent. It seems to me, therefore, that the evidence offered fails to connect Thomas Finch with Latimer as his agent to transfer title to this patent.

I am not satisfied that the subsequent assignment to Latimer of the undivided interest in the patent did not create an equitable interest in the defendants.

It is strenuously urged by complainant that certain agreements between Latimer and the American Company, and certain decrees obtained by it against him, show that the agreement of February 1st was merged therein, and that the part of the agreement relating to the assignment of patents to be thereafter owned by him was surrendered. There is considerable evidence to support this claim. But, for the purpose of determining the principal question in the case, I have assumed that the American Company did acquire Latimer's interest. This question is whether complainant, and each of the parties under whom it claims, had notice of the title of the American Company when they acquired title to the patent; and upon this question it seems to be settled that the burden of proof is on the defendants, and that, if they fail to show that each of said owners had, at the time of purchase, either record or actual notice of said claim, they cannot defeat the title of the complainant. Rev. St. U. S. § 4898; Oakes v. Tonsmierre, 49 Fed. Rep. 449; Davis Improved Wrought Iron Wagon Wheel Co. v. Davis Wrought Iron Wagon Co., 20 Fed. Rep. 700; Gibson v. Cook, 2 Blatchf. 144; Wright v. Randel, 8 Fed. Rep. 599; American Solid Leather Button Co. v. Empire State Nail Co., 47 Fed. Rep. 741; Perry v. Corning, 7 Blatchf. 195; Secombe v. Campbell, 2 Fed. Rep. 357; Regan Vapor-Engine Co. v. Pacific Gas-Engine Co., 1 C. C. A. 172, 49 Fed. Rep. 68.

On July 16, 1886, Thomas Finch again obtained title to the patent under an assignment, expressed to be on consideration. There is no evidence, other than that heretofore referred to, as to his knowledge of the claims of the American Company, except certain newspaper and other notices to be hereafter considered. On December 21, 1886, Thomas Finch sold the patent, through

William M. Cavanaugh, to the Finch Manufacturing Company. Both of these assignments were recorded on October 3, 1887. After Cavanaugh had made the agreement to purchase the patent, and had caused the Finch Company to be incorporated, Latimer Finch being one of its incorporators, he received a letter from the American Company, calling his attention to papers inclosed therein "as somewhat indicating the character of the man we understand you to have connected yourself in the manufacture of goods infringing our legal rights and patents." They further notified him that if he persisted they would hold him accountable "for all violation of our patents, trade-mark, labels, and numbers," etc. Mr. Cavanaugh replied, saying:

"I have not the slightest wish to trespass on any rights that you may have, and, that I may not, I should be glad to have you inform me—1st. To what have you a patent? 2nd. Has your patent ever been litigated, and, if so, was the decision for or against you? Your answer to these two questions will enable me to act in reference to that part of your letter wherein you threaten to sue me for any infringement on your rights. If I am informed as to what your rights are, I probably can avoid interfering with them."

To this letter he received no reply. It does not definitely appear what circulars were inclosed. But an examination of all the circulars issued by the American Company up to this time shows, what seems to me should alone be fatal to defendants' claim, namely, that none of them referred to, or claimed title under, Thomas Finch, or under the patent in suit. They denounce Latimer Finch, and refer to the decrees of injunction restraining Latimer from disclosing secrets, or selling buttons, in violation of the agreement of February, 1881. In the Belden circular, which Mr. Cavanaugh swears he never saw prior to this suit, the American Company is referred to as manufacturers and patentees, but this would naturally refer to the Bailey and Talbot patent, granted in 1881, rather than to the Thomas Finch application, which was not granted until 1887. Furthermore, Mr. Cavanaugh denies that he ever received any notice of the claim of the American Company to the patent in suit.

If the American Company intended to make any such claim, it was clearly their duty then to say so, and to reply to Cavanaugh's letter. They knew Latimer's character, and that he would not tell Cavanaugh of such claim, for he was interested in trying to sell the patent. The patent office records would not show it, for it depended upon a contract with Latimer, which did not refer either to Thomas or his application. The American Company was bound to give specific notice of their claim in distinct and unequivocal language. Fort v. Burch, 6 Barb. 78; Flagg v. Mann, 2 Sum. 486; Wilson v. Wall, 6 Wall. 83; Regan Vapor-Engine Co. v. Pacific Gas-Engine Co., 1 C. C. A. 173, 49 Fed. Rep. 68. Under the circumstances, having failed to give notice until after Cavanaugh had embarked in the enterprise, they could not affect his title by a subsequent notice; and, having suffered Cavanaugh to buy the patent in ignorance of their claim, and having failed to give notice of, and assert title, when it was their duty to do so, said company

is now estopped to assert it as against him or his assignees. These facts, together with much of the evidence as to the subsequent conduct of the American Company, show that they never claimed a right to the patent in suit until long after the assignors of the complainant had acquired title to the patent.

The following facts also tend to support this view: Messrs. Bailey and Talbot applied for and obtained a patent for practically the same invention as the patent in suit, after the execution of the agreement of February, 1881. They did not record said agreement until April 26, 1890. They contested the interference with the Thomas Finch application for several years,—a proceeding wholly unnecessary if they owned the Thomas Finch invention; and when they were beaten in this they caused proceedings to be taken in bar to the issuance of the Thomas Finch patent, on the ground of prior public use. They have always stamped on their circulars, letter heads, and boxes of nails, "Patented October 18th, 1881,"—the date of the patent issued to Messrs. Bailey and Talbot. The labels on the boxes of nails state that every box bears the date of patent. The American Company has never put the date of the patent in suit upon any of its goods. No satisfactory reason has been shown why no bill in equity has ever been brought for a conveyance of the equitable title. In view of these facts, it seems to me that the American Company has failed to show that Cavanaugh or the Finch Company had notice of their claim of title to the patent in suit at the time of purchase. The Finch Company, therefore, got a good title, and such title is good in the hands of subsequent assignees, irrespective of the notice which such assignees might have received.

Much of what has already been stated applies to the claim of notice to Johnson, the assignee of the Finch Company, and the assignor of complainant. The facts appear to be as follows: Before Johnson acquired title, the Finch Company had brought suit on the patent against I. B. Ryer & Co., which was pending at the time of his purchase. In that suit the agreement of February, 1881, was set forth, and the fact appeared that Latimer Finch thereafter acquired a record title to a part of said patent. It appears, however, that this suit had been practically abandoned. That Johnson had dealt with the American Company, and sold their buttons for years, was sufficient to put him upon inquiry. Such inquiry might have shown him the claim under the Bailey and Talbot patent. He might have found the agreement of 1881 by an examination of the interference proceedings. But there is no evidence that he knew of them, and, even if he did, he was not bound to examine them, as the object of interference proceedings is to determine priority, not title. Electrical Accumulator Co. v. Brush Electric Co., 44 Fed. Rep. 602. Johnson caused a search to be made of the records of the patent office, and was assured by his attorneys that the title to the patent was clear before he bought it. Messrs. Bailey and Talbot had frequent conversations with Johnson. There is a sharp conflict of testimony as to whether, in these conversations, they notified him of

their claim to the Thomas Finch patent. But, judging from the tenor of their letters to him, the chief topic in conversations and correspondence was the unfair conduct of Latimer Finch. The claim of ownership of the Thomas Finch patent would appear not to have been asserted. I am not satisfied that Johnson had notice of the claims of the American Company prior to his purchase. But, even if he did have such notice, I do not see how it would affect the title of complainant, provided the Finch Company and Cavanaugh got a good title. I have stated the facts for the purpose of showing the course of conduct of the American Company.

In view of all the facts, I think the American Company has been guilty of such inexcusable laches in the assertion of its alleged rights that it is not entitled to relief. Marsh v. Whitmore, 21 Wall. 178; Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. Rep. 610.

Finally, the defendants claim that, even if the American Company is not equitably entitled to the patent, it has an irrevocable license to make and use the patented article under the agreement of February, 1881, and by reason of the sale of the press. The first claim would seem to be disposed of by the opinion of Judge Brown in American Solid Leather Button Co. v. Empire State Nail Co., 47 Fed. Rep. 741. Besides, the agreement of February, 1881, did not refer to licenses, and, as is forcibly urged by counsel for complainant, if the effect to be given to this agreement is that it is to be treated as a license, then an agreement to assign has greater effect than an assignment; and while the latter, if unrecorded, is void, and of no effect, the former, if unrecorded, is valid, and of some effect, namely, to operate as a license. Gibson v. Cook, 2 Batchf. 151. Whatever effect the fact that Thomas Finch sold a button machine, which was afterwards transferred to the representatives of the American Company, might have upon the question of the license to use that machine as against said company, it has no relevancy to this case. It is not claimed that the buttons sold by defendants were made on said machine. In fact the evidence shows that it got broken, and cannot now be found.

Let there be a decree for an injunction and an accounting.