## Case No. 7,519.
### JORDAN v. DOBSON et al.
[2 Abb. U. S. 398; 4 Fish. Pat. Cas. 232; 7 Phila. 533; 27 Leg. Int. 292.] [1]

Circuit Court, E. D. Pennsylvania. Sept. 12, 1870.

[1] [Reported by Benjamin Vaughan Abbott, Esq., and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 2 Abb. U. S. 398, and the statement is from 4 Fish. Pat. Cas. 232.]

H. T. Fenton and F. Sheppard, for complainant.

N. H. Sharpless, R. P. White, G. H. Earle and C. Guillon, and George Junkins, for defendants.

STRONG, Circuit Justice. In the year 1863, the complainant, by sundry assignments, became the owner of a patent for a new and useful improvement in machinery for the manufacture of wool and other fibrous material, originally granted to John Goulding. The patent was first issued December 15, 1826, and it granted to the patentee the full and exclusive right and liberty to make, construct, and use, and vend to others to be used, the invention therein described for the period of fourteen years from its date. It was surrendered July 29, 1836, and letters patent for the same invention were then reissued for the residue of the term for which the patent was at first granted. For some reason which does not clearly appear in the evidence, but which the bill alleges to have been accident and mistake, the patentee failed to obtain an extension of the patent before the expiration of the time for which it was originally issued. But on May 30, 1862, an act of congress was passed by which the commissioner of patents, on application to him made by the patentee, was authorized to grant a renewal and extension of the patent for seven years from the time of such renewal and extension, or withhold the same under the existing laws, in the same manner as if the application therefor had been seasonably made, with a proviso, however, that such renewal and extension should not have the effect, or be construed to restrain persons, who might be using the machinery invented by said Goulding at the time of the renewal, from continuing to use the same; nor to subject them to any claim for damage for having so used it. Under this act of congress, the patent which had been granted to Goulding, and which had expired, was renewed and extended by the commissioner of patents for seven years from the date of its renewal, viz.: August 30, 1862. It was in the year next following, that the complainant succeeded to its ownership. On June 28, 1864, this extended patent was surrendered, and reissued to the complainant for the remainder of the seven years. Such is the right asserted by the complainant in the bill now before me, and it is established by the evidence.

The bill further complains that since the date and issuing of the last above-mentioned reissued letters patent, and while the exclusive right was in the complainant, the defendants have, without his license, and in disregard of his right, manufactured, used, and sold, and that they continue to manufacture, use, and sell, in large numbers, cards and jacks, and machinery which were made after August 30, 1862, embracing and containing the improvement invented by said Goulding, and secured to the complainant by the last above-mentioned reissued letters patent; or embracing and containing mechanism substantially the same in principle, construction, and mode of operation as the said improvement.

All that need be said of this allegation of infringement is, that, in part, it is incontrovertibly proved. It is true, the defendants have not manufactured or sold the cards, jacks, and machinery described in the patent, but the evidence is full that they have used the patented improvement; that they bought numerous sets of the machinery after the patent was extended, and used them until this bill was filed. Indeed, I do not understand the fact of infringement as being seriously contested. It was not directly denied in the answer, nor was it in the argument. The defense is rested upon other grounds. which I shall proceed to consider.

It is first alleged that all the owners of the

patent have not been made parties to the bill. If this averment is well founded, of course there is a fatal defect. But I do not think it is sustained by the evidence. So far as the written evidence extends, it shows beyond doubt that the entire ownership of the patent to Goulding, was vested in the complainant in 1863, and that in 1864 the reissued lettters were granted to the complainant alone. No grant, or assignment from him to any other person has been shown. The act of congress authorizes assignments only in writing, and legal ownership can be acquired only by written instruments. No successful attempt has been made to prove that the complainant has ever made any written assignment or grant of any part of the title to the patent. It is true, one of the witnesses testified that the parties interested in the patent are Jordan, Marsh & Co., consisting of Eben D. Jordan, B. L. Marsh, Charles Marsh, and James Fisk, Jr., and the firm of Frances, Skinner & Co., and the firm of Brooks & Ball, and that all these parties hold an interest as owners, and are part owners. Had the witness said nothing more, his testimony would have been insufficient to establish legal ownership in the persons named. That, as already said, can only be created by written instruments of transfer, and the witness knew of none. But he has explained and corrected his testimony, saying that, upon reflection, he found he was mistaken in his statement, that other parties than Eben D. Jordan (the complainant) were interested as owners, in the patent; that he knew of no other than the said Jordan who is interested as an owner; that he had never seen or known of the existence of any writing or instrument which conveys any part of the patent to the parties above named, and that he had never heard any of the said parties claim to be part owners with Eben D. Jordan. He has stated farther, that when he testified others than Jordan were joint owners of the patent, he confounded those who, under an arrangement of which he had been informed, were to receive a portion of the net proceeds of the collections under the patent, with owners. I need not say an interest in the net proceeds of collections under a patent does not necessarily amount to legal ownership of the patent itself. It is plain, therefore, as the case appears, that there has been no want of joinder of the necessary parties.

The other matters of defense set up relate mainly to the patent itself, and the defendants have attempted to show its invalidity for many reasons. It is contended that when the surrender of the original patent was made in 1836, and the new patent issued, the surrender was not made as alleged, because the original was inoperative and invalid by reason of a defective specification (the error having arisen by accident and mistake), without any fraudulent or deceptive intention; but that the surrender was made and the reissued letters were obtained with a fraudulent and deceptive intention of including important changes, not a part of the invention of the patentee.

The same allegation is made respecting the surrender of the extended patent and its reissue in 1864, and it is argued that by reason of such fraudulent and deceptive intention, the reissued patents were void. The 13th section of the act of July 4, 1836 [5 Stat. 122], enacted that when any patent which had been granted, or which should thereafter be granted, should be inoperative or invalid by reason of a defective or insufficient description, or specification, or by reason of the patentee claiming in his specification as his own invention more than he had, or should have a right to claim as new, he may surrender the patent and obtain a new one for the same invention, for the residue of the period then unexpired, for which the original patent was granted in accordance with the patentee's corrected description and specification, if the error had arisen, or should arise from inadvertency, accident, or mistake, and without any fraudulent or deceptive intention. Under this act it is the duty of the commissioner of patents, when an application is made to him for a reissue, to inquire and determine whether the defect or insufficiency of the original specification was owing to inadvertence, accident, or mistake, or originated in a fraudulent intention; and also to inquire and determine whether the amended description is of the same invention. It must be assumed that he performed his duty, when the first reissue was made in 1836, and the second in 1864. There is always a presumption that a public officer acts rightly. If the defect or insufficiency of the specifications of the surrendered patents had not arisen from inadvertence, accident, or mistake, and without fraudulent intention, the commissioner had no right to reissue the patent, nor had he any right to reissue it if the invention described in the amended specification was not the same as that originally patented, or intended to be patented. It must be assumed, therefore, he did determine there were defects in the former specifications arising from inadvertence, accident, or mistake, without any fraudulent intention. And having thus determined, his decisions are conclusive. They are not re-examinable except, so far as he decided there was no fraud. It is now settled that the granting of a renewed patent, is so far conclusive upon the question of the existence of error in the original patent arising from inadvertency, accident, or mistake, that it leaves nothing open but the fairness of the transaction. Stimpson v. West Chester R. Co., 4 How. [45 U. S.] 380; Woodworth v. Stone [Case No. 18.021]; Allen v. Blunt [Id. 216]; Curt. Pat. 280.

It must also, I think, raise a presumption against the existence of any fraudulent in-

tent. But if not, a party who alleges fraud must prove it, and there certainly is no evidence in this cause of any such fraud either in the original patentee, or in the complainant. It is not asserted that there is any, if the reissued patents were for the same invention, as that attempted to be described in the patent first granted. That they were for the same I have no doubt. I have said that it is the commissioner's duty, when a patent is offered for surrender, and application is made for reissue, to inquire and determine whether the amended description and specification cover the same invention as that which was sought to be covered by the surrendered patent. That they are for the same invention is a fact that he must find before he can reissue the patent. The fact of reissue then must raise the presumption that the invention is the same. It may even be doubted whether this is not a conclusive presumption, unless, to use the language of Judge Story, in Allen v. Blunt [supra], "it is apparent on the very face of the patent itself, without any auxiliary evidence, that the commissioner was guilty of a clear excess of authority, or that the patent was procured by a fraud between him and the patentee." But conceding that the decision of the commissioner is not final, what there is in this case that would justify my holding against the presumption mentioned, the invention described and patented in the reissued letters of 1864, to be a different one from that attempted to be described in the original patent of 1826, and the reissue of 1836, I can not discover. There are some slight, very slight changes in the specification, and there are changes in the form of the claim. But the surrender of a patent for reissue contemplates a change or an amendment to the former specification, or claim. It is allowed for that purpose in order to make that operative, which was inoperative before. It appears to me that the specification of the original patent described a combination of machines, and mechanical devices to effect a specified result. Some of the devices combined were themselves combinations invented by the patentee. The elements of these subordinate combinations were old, and were not claimed as new, but the combinations themselves were described. Goulding's invention, as described by him, was, therefore, not only of the entire combination of all the machines and devices used, but of some of the elements of that combination. This is evident to me from the description given. All the combinations mentioned in the claims of the reissue of 1864 are described, and represented in the drawings of the reissue of 1836, which are not shown to have differed materially from the description and drawings of the original patent. The language of the descriptive parts of both patents is nearly identical, and the drawings which make part of the descriptions are precisely alike. But though the specification of the earlier patent described the arrangement and primary combination of each element, the claim was in terms only for that larger combination which embraced all the elements. The reissued patent of 1864, in claiming, as it does, not only the entire larger combination, but also those single elements, or constituent parts thereof, which are themselves combinations alleged to have been invented by the patentee (Goulding), is plainly, therefore, for the same invention. I need not say that a patentee's claim is as amendable under the statute, as is his specification. Battin v. Taggart, 17 How. [58 U. S.] 74. See, also, Act March 3, 1838, § 8 (5 Stat. 191).

It has been further contended, on behalf of the defendants, that the act of congress of May 30, 1862, under which the patent was extended, was unauthorized and beyond the power of congress, because the patent had expired in 1840, and the invention had become the property of the public, and because, therefore, the act was in effect taking property which belonged to the public and giving it to an individual. It assumes that every person had a right of property in Goulding's invention immediately after the expiration of his first patent, even before any attempt to appropriate it. It puts a right to appropriate that which is common, and in which there can be no private property until there has been an actual appropriation, on the footing of property acquired. And it overlooks the express grant of power to congress by the constitution. The 8th section of the first article of that instrument ordains, that congress shall have power "to promote the progress of science and useful arts, by securing for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries." This is a large power. It is not said when those limited times shall commence, how long they shall continue, or when they shall end. All that is left to the discretion of congress. I see no reason why, under this commission, congress may not secure to an inventor an exclusive right to his invention for a limited period, beginning at any time after the invention is made, and after it became publicly known. Congress may be trusted, and they are trusted, to take care that in protecting the inventor, the public shall not be injured. And it is in view of this, that our patent laws generally provide that the limited time during which an exclusive right may be enjoyed by the inventor, shall commence with the first revelation of his discovery to the patent office. Even in the act of 1862, which the defendants assail, all persons who had secured rights in the invention by appropriation, before the authorized extension of the patent, were protected. I am not aware that it has ever been seriously thought congress has not power, after a patent has expired, to provide for its extension. In Blanchard v. Sprague [Case No. 1,518], Judge

Story said, in effect, that there is no restriction upon the power of congress to extend a patent, to cases only where the invention had not been known or used by the public; and that an act of congress granting a patent is not unconstitutional because it acts retrospectively to give a patent for an invention which is in public use; that all that is required is. that the patentee should have been the inventor. And in Evans v. Eaton [Id. 4.559], it was asserted that the grant of an exclusive right to an invention for a limited time does not imply a binding contract that at the expiration of the period the invention shall become public property. And still more: it has been decided directly, that congress has power to confer a new and extended term upon the patentee. even after the expiration of the first. Blanchard Gunstock Turning Co. v. Warner [Id. 1,521]; Blanchard v. Haynes [Id. 1,512]. And such is my opinion.

Next it is urged that even under the act of 1862, the commissioner was not authorized to grant the extended patent of that year, because the failure to obtain an extension before the expiration of the time for which the original patent was granted, precluded the patentee from obtaining a valid renewal. This would have been so, doubtless, but for the act of congress I have just been considering. But that act is to be considered as engrafted on the general laws, and they must be construed together. If, however, it be meant by this objection, that the lapse of twenty-two years between the expiration of the patent of 1826, and the application for its extension, established that the invention had been abandoned to the public, the answer is: (1) That congress was not of that opinion, or the act of 1862 would not have been passed. And (2) that the question has been passed upon by the commissioner of patents, and it has been decided that there was no abandonment. The action of the commissioner in granting an extension is conclusive evidence of all the facts he is required to find. Clum v. Brewer [Id. 2.909]. Why it was that the first patent to Goulding was not extended before December 15, 1840; and why, therefore, there was an interval of more than twenty years after its expiration, and before the act of 1862 was passed, and before the extension, I am not informed by any thing that appears in this case, though it was shown in a former suit on the extended patent. I must infer there were sufficient reasons for it, without concluding that the patentee had given up his invention to the public. There could hardly have been an abandonment without an intention to abandon, and whether such an intention existed was a proper subject for the commissioner's inquiry. I should not be justified in reversing the conclusion to which he came.

The next objection urged against the complainant's claim is, that the extended letters patent were granted for a period of seven years from August 30, 1862, the date when the letters were issued, instead of for the residue of a period commencing with the first issue of the patent of 1826. In other words, it is said the commencement of the period was wrong. To this it may be answered, that the act of congress expressly authorized the renewal and extension for the term of seven years from the time of such renewal and extension, and not for the residue of the period to be computed from the date of the original patent. The extension was, therefore, precisely in accordance with the provisions of the law. Reading the special act and the general acts together, the commissioner was authorized to issue letters patent for the invention for fourteen years from December 15, 1826, and for seven years from August 30, 1862, the latter term being an extension of the former.

The objection that the complainant's patent is void because the alleged improvement is only a mode of operation, and therefore not patentable, is not correct in fact. I understand the patent to be for a combination of mechanical devices, by which new and useful results are obtained.

Another defense earnestly urged during the argument, rests upon an allegation of want of novelty in the Goulding invention. The defendants insist that the invention as claimed in the third and fourth claims of the patent (the claims which it is alleged have been infringed) was known before 1826, and was described in "The Operative Mechanic," published in Philadelphia in 1826, the publication purporting to have been from a second London edition.

It is by no means certain that this defense, if it be one, is open to the defendants. It is not distinctly asserted in their answer to the bill. Indeed, the novelty of the invention is not denied in any way (except, perhaps, parenthetically). Much less is there any assertion that the invention had been described in any printed publication in this or any foreign country, prior to Goulding's application for a patent. The nearest approach to an assertion of such a defense, which I can find in the answer, is the following clause, viz.: "And these defendants, further answering say, that they are informed, believe, and so charge, that if said reissued letters patent, so dated the 29th day of July, A. D. 1836, were surrendered by the said complainant, and instead thereof there was obtained by him certain reissued letters patent for the same invention, as is alleged and described in said complainant's said bill of complaint, that such surrender was not made because of the said first reissued letters patent being inoperative and invalid by reason of a defective specification, the error having arisen by accident and mistake, without any fraudulent or deceptive intention on the part of the said John Goulding, but that the same were fully operative and valid for all the in-

tents and purposes that the said John Goulding pretended or designed that they should be, without any defective specification, and without any accident or mistake; that the said surrender, if made, was so made, and the said reissued letters patent obtained by the said complainant with the fraudulent and deceptive intention of comprising and embracing in the said reissued letters patent certain important changes and alterations in said first reissued letters patent, which changes and alterations had become known and used by the public, and which were extensively used as public property, and did not belong or have any part in the invention of John Goulding, and he was not the original inventor thereof, by reason thereof and because of which said fraudulent and deceptive intention the said reissued letters patent were null and void." It is evident that the purpose of this clause was primarily, if not solely, to charge fraud in procuring the reissue of 1836. And this is all that it really means. It does not set forth that there was no novelty in the invention, and I doubt whether it ought to be considered as presenting such a charge, even by any fair implication. If not, the defendants have no right to set up that defense now. A patentee who complains of an infringement, has a right, when his patent is to be assailed for want of novelty in the invention, to be informed distinctly by the answer to his bill, if he proceeds in equity, that such a ground of defense will be taken. I might, therefore, dismiss this defense with the single remark that the defendants can not now be permitted to assert it.

But if it be admitted that the defendants are in a condition to allege want of novelty in the invention against the complainant's patent, they must begin with very strong presumptions against them. Not only is there a presumption in favor of the validity of the patent arising from its issue, its reissue, its extension, and the reissue of the extended letters, but suits have been brought upon it at law and in equity, and the patent has been sustained. The evidence shows that in the district of Massachusetts, in the first circuit, an action at law was brought by the owner of the patent in 1863, against Bickford & Lombard, for an alleged infringement, and that a verdict and judgment for a large sum of money were recovered against those defendants. [Case unreported.] It is also proved that in 1864, the complainant filed his bill in equity, in the same circuit, against the Agawam Woollen Co. [Case No. 7,516], complaining of an infringement of his patent, and praying for an injunction and account. To this bill an answer was put in, denying that Goulding was the first inventor, and asserting the invalidity of the reissued patent. Proofs were taken, the case was subsequently heard on the evidence, and the circuit court entered a decree according to the prayer of the bill, sustaining the pat-

ent. On appeal to the supreme court the decree was, after argument, affirmed on its merits. Agawam Woollen Co. v. Jordan [7 Wall. (74 U. S.) 583]. It is alleged in the defendants' answer to the present bill, and it was insisted at the argument, that these suits were collusive; that the first was not contested, and that the second was an amicable one, gotten up for the special purpose of procuring a decision when the real defense would not be shown. There is not a tittle of evidence in the case to sustain these allegations. And it is manifest in regard to the second suit, at least, that it was a seriously contested case. The cases must, therefore, have full effect in strengthening the presumption that Goulding was the first inventor of the improvements described in the patent, the extension and the reissues, and that the patent is not void for want of novelty of invention. Such a presumption is further confirmed by evidence that various persons took licenses from the owner of the patent. In view of all this, it would not, in my opinion, be enough to sustain the defense, if the defendants had succeeded in raising doubts respecting the novelty of the invention. I agree, the cases decided in the first circuit, and at Washington, are not conclusive upon them, but, as was said by Shipman, J., in Tompkins v. Gage [Case No. 14,088], they must show by satisfactory and preponderating evidence, that they antedate the invention set forth in the patent. In this I think they have failed. The witness relied upon by them is Barton H. Jenks, a most respectable manufacturer of machinery, and who had manufactured and sold the machinery patented to the complainant, under a license from him granted April 12, 1864. Before referring to his testimony, I may remark that the question is respecting the novelty of the improvements mentioned in the third and fourth claims of the reissued patent of 1864. It is those which the complainant asserts the defendants have infringed. In Mr. Jenks' testimony he has expressed his opinion that there is nothing new in the third claim, that is, in the claim itself. Whether he means by this that there is nothing new in the claim, regarded separately from the specification to which it refers, he does not state. Probably he does. He is also of the opinion that if there is any thing new in the fourth claim, it is the combination of bobbins, lying parallel with spindles for twisting, and with jaws, or their equivalents, for retaining the roving. The opinions of experts are evidence as to matters of science within their peculiar departments of knowledge, but the value of such opinions must be tested by the reasons on which they are built. Mr. Jenks does not appear ever to have seen any machine or combination older than Goulding's patent, substantially the same in principle as those described in the third and fourth claims of the reissued patent of 1864. His opinions rest upon a comparison of those claims with

plates of machines, or combinations of mechanism found in "The Operative Mechanic," published in Philadelphia in 1826 (whether before or after the Goulding·patent does not appear), and on a resume and plate of Arkwright's patent of 1776, found in the American Journal, Vol. I, published in Washington in 1828. Comparing the reissue of the extended Goulding patent with these, he thinks there is no difference in principle, though there is in mechanical construction. And yet when asked, what is there new in the combinations of the reissued patent, he answers that he finds none, "other than the peculiar combination with the carding machine," previously mentioned by him.

After reviewing carefully the testimony of this witness, I am inclined to think when he gave his opinion that there is nothing new in the combinations claimed in the reissued patent, he meant only that the machines, devices, or elements, out of which the combinations are formed, are all old. But if this was not his meaning, and if the largest latitude be allowed to his opinion, there is still a decided preponderance of evidence that the combinations described in the patent were new when the patent was first granted. Henry B. Renwick has been produced as a witness for the complainant, an expert of extensive knowledge. His opinions are before me. They are that, to the extent of his knowledge, the combinations mentioned in the third and fourth claims of the complainant's patent were new, at the time when the original patent was granted, his knowledge extending to all patents, English and French, before that date, and to descriptions from such books as he could find published prior to that time. More than this, he has compared the combinations with the plates and descriptions in "The Operative Mechanic" and Law Journal, referred to by Mr. Jenks, and has pointed out what appear to me very substantial differences. He has testified that one of the machines which Mr. Jenks thinks the same in principle as one of the combinations claimed by the complainant, has no feed apron, and no condensing apparatus of any kind, that it does not form a roving, that the bobbins are not revolved by means of a drum (in all these particulars unlike Goulding's combination), and that the machine is merely a bobbin and flyer machine for spinning flax. He is equally positive that the other machine referred to by Mr. Jenks is entirely different in principle from the combinations claimed as the fourth in the reissued patent, and he gives as reasons for his opinion that it is not a twisting machine, it has no reel or bobbin from which roving is taken, it has no row of spindles to which the bobbin is parallel. no traveling carriage, and no jaws, or their equivalents for retaining rovings—that, in fact, it is a machine for winding silk into skeins. Without pursuing this examination further, it is manifest that if Mr. Renwick is to be believed (and no attempt has been made to show that he has stated the facts incorrectly), the improvements claimed in the complainant's patent, differ entirely from the machines or devices with which Mr. Jenks compared them, alike in principle, in mode of operation, in mechanical construction, and in the results produced. The defense of want of novelty of invention consequently fails.

The only other defense set up by the defendants that requires notice, is that the complainant has acquiesced in invasions of his rights, until it would be inequitable now to assert them. Of this I discover no evidence. What is relied upon is a license granted by the patentees to Alfred Jenks & Son, given April 12, 1864, to make and sell at Bridesport, or Philadelphia, Pennsylvania, the machinery patented upon the terms in the license specified. The terms were that the licensees should purchase a license for the use of the machinery manufactured and sold by them before delivery; that they should furnish monthly to Jordan (then the assignee of the patent), a statement of all persons to whom they had sold and delivered such machinery, and that they should stamp on such machinery, so delivered, before its delivery, the words "Patented by John Goulding, December 15, 1826. Reissued July 29, 1836. Extended August 30, 1862," or some equivalent marks. How such a license as this can be regarded as acquiescence in any invasion of the complainant's rights, is more than I can comprehend. It is rather a distinct and positive assertion of them, a plain indication of an intent to hold responsible any and all persons who might purchase the machinery from the licensee and use it. There is evidence that the machines were sold to some parties without exacting any royalty for the patentee, but there is nothing to show that the patentee ever acquiesced in the use by the purchasers.

Upon the whole, I am of opinion that every defense set up has failed, and that there is nothing which could justify my withholding a decree in favor of the complainant. But as the extended patent has now expired, there can only be a decree for an account. Let a decree be prepared accordingly.