BLANFORD (CROSS v.). See Case No. 3,429.

## Case No. 1,532.

### BLANK v. MANUFACTURING CO.

[3 Wall. Jr. 196;[1] 20 Leg. Int. 37.]

Circuit Court, D. Delaware. Sept. Term, 1856.

PATENTS—INFRINGEMENT—EQUITY PRACTICE—INJUNCTION AFTER EXPIRATION OF PATENT — ACCOUNTING.

1. The equity for an account in patent and copy right cases is not, in the courts of the United States, a mere incident to a right to injunction; however this be by the rules of English chancery.

. [See Sanders v. Logan, Case No. 12,295.]

2. In the courts of the United States the right to an account may exist, and an account be directed where there can be no injunction; as e. g., where the term of the patent has expired before the final hearing of the case.

[See Jordan v. Dobson, Case No. 7,519; Atwood v. Portland Co., 10 Fed. 283; Gottfried v. Moerlein, 14 Fed. 170; Adams v. Howard, 19 Fed. 317.]

In equity. The complainant in this case—an equity bill, praying an injunction and account of profits—was the assignee of one [William B.] Sickles, to whom a patent [No. 2,631] had been granted. The bill charged that the validity of the patent had been put in issue in a suit at common law, between Sickles and one Rodman, of which it gave an account, and its validity established by a verdict for the patentee. It charged also that the defendants were infringing the patent. The case was heard in September, 1856; a few months prior to which date, to wit, on the 20th of the May preceding, the term of the patent had expired. Against the injunction it was now contended, that courts of equity entertain jurisdiction of patent and copyright cases only for the purpose of injunction; that the equity for the account is strictly incident to the injunction; and that, therefore, if an injunction is refused, or for any reason cannot be decreed (which it was said it could not here be, because the patent had expired), an account cannot be given, but the plaintiff must resort to a court of law. [Point overruled.]

GRIER, Circuit Justice. The proposition contended for may be considered as a correct statement of the general rule as settled in England. Baily v. Taylor, 1 Russ. & M. 73. This doctrine had its origin in the case of Jesus College v. Bloom, 3 Atk. 264, Amb. 54, as applied to bills to restrain waste; but, since that time, the exceptions to the rule have become so numerous, that the rule can hardly be recognized as existing. The bill needs only to pray a discovery for the purpose of account, and it will be sustained for the account only.

The proposition, it is said in the books, cannot be maintained, that a court of equity will not interfere to direct an account when indebitatus assumpsit will lie at law. Nor

[1] [Reported by John William Wallace, Esq., and here reprinted by permission.]

is the converse of the proposition true, that equity will decree an account in all cases where an action for money had and received, or indebitatus assumpsit, may be brought. But, whenever the subject matter cannot be as well investigated in those actions, a court of equity exercises a sound discretion in decreeing an account. Carlisle v. Wilson, 13 Ves. 276, etc.

As it appears in this case that, in order to ascertain the extent of the plaintiffs' damages, it might become necessary to have a discovery and account of profits, I see no good reason why the court might not retain jurisdiction of the case for that purpose, even on the principle of the English cases. The jurisdiction of the court ought not to depend on the accident of the date of its decree. If, in this case, the decree were dated on the 19th of May, 1856, the jurisdiction of the court could not be doubted, while it is challenged as impotent to give any decree on the 21st of the same month. If the complainants are able to sustain their case on the other points, and it was absolutely necessary, to sustain our decree, that an injunction form a part of it, I would order the decree to be entered nunc pro tunc as of the date of the 19th of May last. The delays of a court of chancery should not be suffered to operate as a bar to the complainants' suit.

But the courts of the United States have their jurisdiction over controversies of this nature by statute, and do not exercise it merely as ancillary to a court of law. The 17th section of the patent law of 1836 [5 Stat. 124] ordains that "all actions, suits, controversies and cases arising under any law of the United States granting or confirming to inventors the exclusive right to their inventions or discoveries shall be originally cognizable, as well in equity as at law, by the circuit courts of the United States."

Besides this general and original cognizance or jurisdiction over the whole subject matter, a special power is conferred on the circuit courts to grant injunctions. Having such original cognizance of these controversies, the courts of the United States do not, in all cases, require a verdict at law on the title, before granting a final injunction, or concede a right to either party to have every issue as to originality or infringement tried by a jury.

Exercising our jurisdiction in these controversies not by assumption for a special purpose only, or as ancillary to other tribunals, but under plenary authority conferred by statute, the technical reasons which compelled the English chancellor to refuse a decree for an account where he could not decree an injunction, can have no application.

Point overruled.

[For other cases involving this patent, see note to Sickels v. Youngs, Case No. 12,838.]