[Cited in Parks v. Booth, 102 U. S. 96. See 101 U. S. 647.]

## Case No. 7,012.

IMLAY v. NORWICH & W. R. CO.

[4 Blatchf. 227; 1 Fish. Pat. Cas. 340.] [1]

Circuit Court, D. Connecticut. Oct., 1858.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 4 Blatchf. 227, and the statement is from 1 Fish. Pat. Cas. 340.]

Ralph I. Ingersoll and George Gifford, for plaintiff.

Roger S. Baldwin and Edward Perkins, for defendants.

INGERSOLL, District Judge. Exception has been taken by the defendants, that, as an injunction cannot now be ordered. the account and the other relief sought by the bill cannot be granted; that the ordering of the account, and the granting of the other relief, are ancillary to the granting of the injunction: and that an account cannot be ordered, unless an injunction is also ordered. The patent act of July 4th. 1836 (5 Stat. 124), in its 17th section. provides. that all actions. suits. controversies, and cases arising under any law of the United States granting or confirming to inventors the exclusive right to their inventions and discoveries. shall be originally cognizable, as well in equity as at law, by the circuit courts of the United States. And it has been expressly decided by Judge Grier, in a case before him, on the Sickels patent, that, when the patent has expired between the time of the filing of the bill and the hearing an account can be ordered and other relief granted, though, on account of the expiration of the patent, an injunction to restrain the future use cannot issue.[3]

---

[3] The case referred to is that of Sickels v. Gloucester Manufacturing Co. [Case No. 12,-841], decided by Mr. Justice Grier, in the circuit court for the district of New Jersey, at the September term, 1856. In his opinion in that case, Judge Grier says: "It is contended that courts of equity entertain jurisdiction of patent and copyright cases only for the purpose of injunction; that the equity for the account is strictly incident to the injunction: and that, therefore, if an injunction be refused. or for any reason cannot be decreed. an account cannot be given, but the plaintiff must resort to a court of law. This proposition may be conceded as a correct statement of the general rule. as settled in England. See Adams. Eq. 219; Hind. Pat. 361; Baily v. Taylor, 1 Russ. & M. 73. This doctrine had its origin in the case of Jesus College v. Bloom. 3 Atk. 264. and 1 Amb. 54. as applied to bills to restrain waste; but, since that time. the exceptions to the rule have become so numerous. that the rule can hardly be recognized as existing. The bill needs only to pray a discovery for the purpose of account, and it will be sustained for the account only. See 2 Eden. Inj. (by Waterman) 245. The proposition, it is said. cannot be maintained. that a court of equity will not interfere to direct an account when indebitatus assumpsit will lie at law. Nor is the converse of the proposition true, that equity will decree an account in all cases where an action for money had and received. or indebitatus assumpsit, may be brought. But, whenever 'the subject-matter cannot be as well investigated in those actions, a court of equity exercises a sound discretion in decreeing an account. See Corporation of Carlisle v. Wilson. 13 Ves. 276 et seq. As it appears, in this case, that, in order to ascertain the extent of the plaintiff's damages, it might become necessary to have a discovery and account of profits from saving of fuel by using his invention. I see no good reason why the court might not retain jurisdiction of the case for that purpose. even on the principle of the English cases. The jurisdiction of the court ought not to depend on the accident of the date of its decree. If. in this case. the decree were dated on the 19th of May. 1856. the jurisdiction of the court could not be doubted. while it is challenged as impotent to give any decree on the 21st of the same month. If the complainants are able to sustain their case on the other points. and it was absolutely necessary, to sustain our decree, that an injunction form a part of it. I would order the decree to be entered nunc pro tunc,. as of the date of the 19th of May last. The delays of a court of chancery should not be suffered to operate as a bar to the complainants' suit. But the courts of the United States have their jurisdiction over controversies of this nature by statute, and do not exercise it merely as ancillary to a court of law. The 17th section of the patent law of 1836 ordains. that 'all actions. suits. controversies and cases arising under any law of the United States granting or confirming to inventors the exclusive right to their inventions or discoveries. shall be originally cognizable. as well in equity as at law. by the circuit courts of the United States.' Besides this general and original cognizance or jurisdiction over the whole subject-matter. a special power is conferred on the circuit courts to grant injunctions. Having such original cognizance of these controversies, the courts of

The validity of the patent is not questioned by the defendants. They admit, that the thing patented was new and useful, and that the patent secured to Imlay that which it purported to secure to him. Only that part of the bill is denied, which charges that the defendants are using and have used the device, the exclusive right to use which was secured to Imlay by the patent.

Two questions, therefore, are presented for determination: 1. What does the patent purport to grant and secure to Imlay? 2. What do the defendants use? And, having determined these two questions, then this further question will be presented: Is the device used by the defendants, or any one of the devices used by them, substantially like the device or invention secured to Imlay, or any substantial portion of the same?

The invention of Imlay was designed to afford a new and improved mode of supporting the bodies of eight-wheeled railroad cars upon the trucks on which they are placed; to supply a more safe and useful connection between the truck and the car body than had before been known, by the support which the invention would afford to such connection; to more effectually, usefully and safely unite the two—the truck and the car body—into one, for the use for which the car was designed, the transportation of passengers and freight; to effectually ensure the keeping of the car body on the truck, in its proper position, by the support provided; while, at the same time, the car, composed of the body and trucks, could move with facility and ease, upon the track of the road, as desired. The support for the car body required, was a support while the car was in motion; and the design of the invention was, to give such support, to keep the car body on the truck safely, securely, and in proper position, while the car was in motion. The support particularly required was a longitudinal and lateral support. Without a longitudinal support, there would be no sufficient protection for the carriage to remain on the truck in proper position, either in the forward or backward movements of the car, especially in the case of a collision, or when it should meet with any obstruction. Without a lateral support, there would be no sufficient safeguard to protect the carriage from being thrown off, or turned over on the side. A vertical support was also required. But such vertical

support would be of no sufficient use in a car moving at a rapid rate of speed, unless there was both a longitudinal and lateral support; and the object of the patentee, in the invention which he made, and which he described in his specification, was to afford support and protection in these several particulars. By such invention, any movement was allowed in turning curves, and also a complete rotary movement, if desired.

The essential means used to accomplish the desired result, and to afford the support required and intended, in the particulars above stated, are two cylindrical plates, one placed above and within the other, in the middle of the width of the car, at or near each end of the car, one strongly confined and fastened to the carriage, the other strongly confined and fastened to the truck, and which cylindrical plates, being so applied, the one entering the other to a sufficient depth, afford the support desired and intended, without the aid of any other instrumentality.

The specification describes how, by these means, the required support in the particulars above-named is given, and the desired result is obtained, without any aid from any other instrumentality; and the description is intended to show how, by these means, the support in the particulars above-named can be effectually afforded; not only how it can be afforded in one of the particulars named, but in all of them; not only how danger is guarded against, and safety secured from the vertical pressure, but also how, from the longitudinal and lateral pressure.

A hollow round cast-iron bed-plate is made, two feet in diameter, more or less, flat upon the bottom, and of sufficient thickness, for strength, to support the weight which it is intended to sustain. It has an upright rim projecting upwards all around its periphery, two inches high more or less, and about one inch thick. The bottom of this bed-plate is turned, upon the inside, flat or level, and the top edge of the rim horizontal and true, and its inner periphery vertical and smooth. A top plate of the same diameter is made, with a rim, projecting downwards, of nearly the same thickness as that of the bed-plate rim, but not quite so deep. This is turned into the exterior rim, so as to make nearly a close fit. It has a flange projecting sufficiently to cover the exterior rim of the bed-plate, the under side of which is turned smooth, so as to correspond to the top edge of the under rim. The interior of the top plate is made convex, projecting downwards from the rim, towards the centre, and about one-sixteenth of an inch deeper in the finish than the rim of the bed-plate, and is all turned smooth upon the inside, and the centre is made to bear upon the centre of the bed-plate, upon a surface of four inches in diameter, more or less. Upon this centre the whole weight of the car body and load rest, while, at the same time, the bed-plate

the United States do not, in all cases, require a verdict at law on the title, before granting a final injunction, or concede a right to either party to have every issue as to originality or infringement tried by a jury. Exercising our jurisdiction in these controversies, not by assumption for a special purpose only, or as ancillary to other tribunals, but under plenary authority, conferred by statute, the technical reasons which compelled the English chancellor to refuse a decree for an account where he could not decree an injunction, can have no application. This point is, therefore, overruled."

can vibrate or revolve, under the cap-plate, sufficiently for all of the curves and crossings of the road, or can make an entire revolution, if desired. The bed-plate is made fast upon the centre of the truck. The cap-plate is made fast to the carriage body. The centre of the cap-plate being made a grain deeper than the height of the exterior rim, the flange of the top plate is left free from the rim of the bed-plate, except when the cap is out of level, at which time the rims gripe each other, and thus prevent its being tilted out of the bed.

It will thus be seen, that, by the application of these essential means, as described, a mode of supporting eight-wheeled railroad car bodies on their trucks was adopted; that, by the connection made by these means, a support was given to the carriage, to keep and hold it in its proper and desired position on the truck; that the support and protection afforded was a longitudinal one, when the car was moving in a forward or backward direction, or when, by collision or any other cause, force was applied to it longitudinally—a lateral one, when turning curves, or when the car, from any cause, received a lateral or side direction—and a vertical one; that a vertical, longitudinal, and lateral safeguard against danger was provided, which was new and useful. And the patent secured to the patentee the exclusive right, during the existence of the patent, to the use and application of these essential means described — two cylinder plates, male and female, one within the other, and acting in combination, one attached to the truck and the other to the car body, substantially as set forth in the specification whereby the truck and carriage were combined, to give support to all kinds of eight-wheeled railroad car bodies, upon springs, or in any other form or size, whereby the application of the same essential means was substantially made, to obtain the same object.

The devices which the defendants use and apply, to connect their car bodies with the trucks, and to give support vertically, longitudinally and laterally, to the carriage while on the truck, and to keep it in its proper position, and to secure it from being detached from the truck, and to enable the whole to work easily, usefully, safely and securely, are the ordinary king-bolt, such as is used to connect the carriage to the forward wheels in the common road wagon, connecting the carriage with the truck, and passing through the centre of the two cylinder plates hereinafter mentioned; side bearings, near the sides of the carriage, resting on the truck, and which are intended as a vertical support to the carriage; and two cylindrical plates, male and female, one within the other, and acting in combination, one strongly attached and fastened to the truck, the other strongly attached and fastened to the carriage in the middle of the width thereof, and at or near

each end. The cylindrical plates used by the defendants, they call "guard collars" for the king-bolt.

It is claimed that these devices, as they are used and applied on the railroad cars of the defendants, are intended to be so arranged and adjusted that the whole vertical support is to be afforded by the side bearings, and the whole longitudinal and lateral support by the king-bolt, or the king-bolt and side bearings combined; and that the two cylinder plates are so arranged and applied that they do not touch each other, and, therefore, do not afford any vertical, longitudinal or lateral support to the carriage while on the trucks; that they are mere guard collars, useful only in case the king-bolt should get out of place, or should, from any cause, not perform its proper function, to hold together, in their proper places, the carriage and the truck, and to give to the carriage the necessary longitudinal and lateral support.

In the practical operation of the devices, as applied and used by the defendants on their cars, it frequently occurs, from the wear of the side bearings, or from the manner in which the devices are adjusted, that the interior of the top cylindrical plate, which projects downward into the cylindrical bed plate towards its bottom, is made to bear upon the bottom of the bed-plate, on the inside thereof, so that the weight of the car body and load rests upon it, either wholly or in part. If, for any cause, the side bearings cease to afford any vertical support, then the whole vertical support is afforded by the cylindrical plates; and it frequently occurs, from the wear of the king-bolt, or from some defect in it, or from an adjustment of the several devices, that the inner cylindrical plate does actually press upon the outer one, on the inside, both longitudinally and laterally, and that thus, by the mode in which they are applied, they do actually afford a longitudinal and lateral support; and whenever, from any cause, the king-bolt and the side bearings become useless, the cylinder plates, as applied are the only essential means which afford the entire vertical, longitudinal and lateral support.

But I do not dispose of the case upon this limited view; for the use and application of the two cylinder plates, one within the other, as the defendants claim they are used and applied on their eight-wheeled railroad cars, would be in violation of the rights secured to the plaintiff by his patent. Such use and application would give substantial support to the railroad carriage, and would be the use and application of the essential means discovered by and patented to the plaintiff. It is not necessary that such use and application should be the only essential means by which the support is afforded, to make such use and application an infringement of the plaintiff's patent. If it were, all patents could be infringed with impunity, by adding something to the means patented. If they

are an essential means, though other means are used in connection with them, to give the required support, the patent has been infringed, even though the object or result to be secured by such other means in connection, is better accomplished.

The application of the cylinder plates, one within the other, as the defendants claim they are applied by them, is for some purpose. Before the invention of the plaintiff, such application to railroad cars had never been known; and the general use of such application, since the invention of the plaintiff, in one form and another, on all eight-wheeled railroad cars, on most, if not all, of the railroads in the country, shows that such use was, and is, for a highly useful purpose. It was, and is, to accomplish a desirable result. The defendants say, that the cylinder plates, as used and applied by them, are merely the guard collar for the king-bolt, which king-bolt affords the longitudinal and lateral support to the carriage. Upon this hypothesis, they are used and applied as an aid to the support afforded—as an essential means to make the support effectual—as an assistant to make the support secure; and it has already been shown, that it is not necessary that the way in which they are applied should afford the sole support rendered, to make the use and application an infringement of the patent. They are means used, the more effectually and securely to keep and hold in proper position the carriage on the truck. The object of support, and the meaning of the word, as it is used in the patent, were to keep and hold the carriage safely and securely in such proper position; and the devices used by the defendants are for that purpose. None of them are for any other purpose. The cylinder plates, as used by them, one within the other, are for that purpose, and are effective in aid of the accomplishment of such purpose, whether called a guard collar for the king-bolt, or called by any other name. Their office is, to securely and safely keep and hold, without any other instrumentality, the carriage in its proper position on the truck, whenever, from any cause, the king-bolt and side bearings are inefficient for that purpose. When, from any cause, the king-bolt and side bearings do not perform their office, they are the only device to keep the carriage in such proper position, and to afford it the necessary vertical, longitudinal and lateral support; and it is not necessary, when the cylinder plates have been used and applied, as they have been used and applied by the defendants, that the king-bolt and side bearings should be inefficient before there can be an infringement of the patent. The patent may be violated, though the inner cylindrical plate may not actually press upon the outer one.

Patents are to be construed liberally, and are not to be subject to a strict and rigid interpretation. The rights secured are to be protected against any substantial violation.

Formal and subtle differences are to be disregarded. Where, in two devices, the end to be accomplished is the same, and the substantial means to accomplish the end are the same, the two devices are identical, though one may accomplish the end more effectually than the other.

With this view of the case, there must be a decree in favor of the plaintiff, as prayed for, except as to that part of the prayer which seeks for an injunction to restrain a further use. As the patent has now expired, an injunction against a further use cannot be ordered.