## Case No. 11,928.

### ROBERTSON v. SECOMBE MANUF'G CO.

[10 Blatchf. 481; 6 Fish. Pat. Cas. 268; 3 O. G. 412; Merw. Pat. Inv. 137.][1]

Circuit Court, S. D. New York. Feb. 27, 1873.

PATENTS—REISSUE—IDENTITY—INTERPOLATION—CAVEAT.

1. The reissued letters patent granted to Thomas J. W. Robertson, December 12th, 1871, for an "improvement in hand stamps," the original patent having been granted to him September 22d, 1857, and extended for seven years from September 22d, 1871, are valid.

[Cited in Robertson v. Garrett, Case No. 11,924.]

2. The introduction of a comma into the specification of the reissue, in a sentence found in the original specification, and alleged to be an interpolation, and to introduce a new idea, *held* to be accidental, and a clerical error.

[Cited in Atwood v. Portland Co., 10 Fed. 287.]

3. A paper which the commissioner of patents had declared to form no part of a caveat, because it had been adjudged, by a commission appointed by him, to be fraudulent, and to have been surreptitiously introduced into the file of such caveat, *held* to form no part of such caveat.

[Cited in Campbell v. James, Case No. 2,361.]

[Final hearing upon pleadings and proofs. Suit brought upon reissued letters patent for "improvement in hand-stamps," granted December 12, 1871, to Thomas J. W. Robertson, No. 4,675. The original letters patent were granted to said Robertson, September 22, 1857, No. 18,249, and extended for seven years from and after September 22, 1871. In the engravings, which are copies of the drawings of the patent,[2] A is the handle; B, the

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 10 Blatchf. 481, and the statement is from 6 Fish. Pat. Cas. 268. Merw. Pat. Inv. 137, contains only a partial report.]

[2] [For drawings of this patent, see Case No. 11,925.]

metallic forked shank; C is the metallic ring attached to the shank B, and having letters (forming the name of the post-office or other name) engraved upon its face; D is the shaft passing through the shank, and having upon it and between the forks of the shank the three type-wheels c, d, e, which, it is stated in the specification, may be provided with "the names of the months of the year and also ten numerals."

[The claims of the reissued patent are as follows: "1. In combination with a handle and a series of printing-wheels, or their equivalents, for printing dates, a fixed type form or printing-die, for dating purposes, substantially as described. 2. A hand stamp, having a permanent inscription, form, or die, provided with an aperture, through which the type-wheels work, when so arranged that the said type-wheels may be turned, for changing the dates without shifting the fixed form or die, substantially as specified. 3. A hand-stamp, having a series of type-wheels provided with holes to receive a locking-pin, E, substantially as specified."

[A more complete description of the invention will be found in the opinion of the court. The defendants denied that the reissued patent was for the same invention as the original; denied the utility of the invention; denied that Robertson was the first and original inventor of the devices claimed, and insisted that the alleged invention was shown in several prior patents and in a caveat filed by Marcus P. Norton, of Troy, N. Y., prior to the date of complainant's invention. A large amount of testimony was taken by both parties, on which the case went to hearing.] [3]

Frederic H. Betts, for complainant.
Nelson Cross, for defendants.

BLATCHFORD, District Judge. This suit is brought on reissued letters patent granted to the plaintiff, December 12th, 1871, for an "improvement in hand stamps," the original letters patent having been granted to the plaintiff September 22d, 1857, and extended for seven years from September 22d, 1871. The reissued letters patent are granted for twenty-one years from the 22d of September, 1857. The specification says: "My invention relates to the construction of stamps for producing an impression, such as a postmark or other analogous device, a part of which requires to be frequently changed, such as the date, and part requires to remain the same, as the name of the post office. In order to give such stamps any considerable utility, the impression must be readily made, and that part of the type which requires frequent change must be always on hand. This result I secure by combining, in a hand stamp, fixed type for producing that part of the inscription designed to be always the same, and a series of combined changeable types, bearing the necessary characters to allow of any de-

[3] [From 6 Fish. Pat. Cas. 268.]

sired change, which shall be connected with, and form part of, the stamp. These types are connected and arranged to revolve in substantially the same manner as the combined types used in book-paging machines, but differing therefrom in having an arrangement by which the desired inscription may be printed repeatedly, without changing at each impression. Prior to my invention, dating stamps were made with loose types, book-paging machines were used with combined types in the form of wheels and chains, and machines for printing tickets, &c., had type wheels combined with permanent inscription forms; but, these last machines were so made as to produce the impression only on the under surface of the materials, and to change the type wheels at every stroke. So far as I am aware, no dating stamp was ever made previous to mine, with wheel type, or its equivalent, nor a fixed inscription plate or form combined with such type, in such a manner that the latter could be readily turned without changing the relative positions of the said wheels and permanent inscription, and yet be capable of printing simultaneously the combined inscriptions in a small space, as is necessary in cancelling revenue stamps; nor could an impression be readily made by such machines on the upper surface of the paper. My invention, therefore, consists, mainly, in the construction of a stamp in which combined changeable dating type are used in combination with a fixed inscription form or printing die, and in so arranging these parts in connection with a stem or handle, that the dating types may be easily changed and thoroughly secured, and that the impression may be readily made, in a small compass, on the upper surface of the material." The specification then describes the construction and arrangement of the parts of the stamp, with references to three figures of drawings annexed. There is a handle, to the bottom of which is attached a metallic forked shank. To the bottom of this shank is attached a metallic ring, said ring being secured to the shank by means of screw bolts. The lower part of the shank is also notched, in order to receive the ring and form a front bearing for it; but, it is stated that various other methods may be adopted, at the pleasure of the maker, for attaching the ring to the shank, and that, when the stamp is intended for a letter stamp, the name of the post office may be engraved on the face of the ring. A shaft passes horizontally through the shank. On this shaft are placed three type wheels, which revolve independently of each other, on the shaft. It is stated, that the faces of these type wheels may be provided, respectively, with "the names of the months, of the year, and also ten numerals." The shaft is arranged at such a distance from the face of the ring, that the three type wheels may be turned so that the types upon said wheels will come in line, or form a horizontal plane, with the types on the ring; and

thus, when the face of the stamp is inked over by any suitable inking device, and the stamp duly pressed upon a letter, or other suitable substance, an impression will be left thereupon of the types contained on the ring, and also of those types of the three type wheels that are in line with the types on the ring. Only one line of types upon the type wheels can simultaneously come into a horizontal plane with the types on the ring, the remaining types being distributed around the peripheries of the type wheels, so that they cannot touch the paper on which the impression is to be made. A lock-pin passes horizontally through the shank, and also through the three type wheels. The object of this pin is to lock the type wheels, so that, when any one line of types has been turned, and brought into a horizontal plane with the types upon the ring, such line of types will be held fast, and prevented from getting out of place. By removing the pin, the combination of letters on the type wheels may be changed at pleasure. The stamp shown in the drawings has the face of its ring made in circular form; but it is stated to be obvious; that the shape of the ring may be changed to suit the pleasure of the purchaser, without changing the general construction of the stamp. It is also stated, that the type wheels and ring may be engraved with any suitable letters or figures, and that the device is particularly useful for stamping letters, tickets, &c., where the words or numbers have to be frequently changed. It is also stated, that, instead of the pin for locking the type wheels, small springs may be used, one end of each being attached to the shank, and the other ends pressing into the interstices between the lines of types upon the type wheels, and so made as to prevent accidental movement of the wheels in either direction; and that, although either the pin or springs may be used separately for locking the type wheels, the patentee should prefer to use them in combination, as the springs may hold the day wheels in position when the month wheel is being turned, which the pin will not do, and, when the wheels are properly arranged, the pin may be screwed fast, and the wheels much more securely locked than by the use of springs alone. The claims are as follows: "1. In combination with a handle, and a series of printing wheels, or their equivalents, for printing dates, a fixed type form, or printing die, for dating purposes, substantially as described. 2. A hand stamp having a permanent inscription form or die, provided with an aperture through which the type wheels work, when so arranged that the said type wheels may be turned, for changing the dates, without shifting the fixed form or die, substantially as specified. 3. A hand stamp, having a series of type wheels provided with holes to receive a locking-pin, E, substantially as specified."

The patent office, in examining the question of the novelty of the invention, on the application for the extension of the patent, which was opposed, referred to the English and American patents on the subject. There is an English patent of C. M. Hannington, in 1831, which has a series of type wheels pivoted on a shaft, and entering an opening in a plate, which plate has engraved or formed upon it, on one side of the opening, the date, and, on the other side, in a semi-circular form, "two pence." The type on the type wheels are figures or numbers. The article to be stamped is pressed down on the type by screw pressure. The object of the device is described as being for producing government, commercial, or law stamps, numbering documents, and stamping fabrics with number and date, to prevent fraud. It was a combination of type wheels for numbering, with a fixed type form for dating and printing; but it had no handle, and was not a hand stamp, and the impression was made on the under surface of the material. On an examination of all the prior patents, the patent office arrived at the conclusion, that type wheels for numbering and lettering were old; that type forms for stamping or printing the name of a post office, or other matter, were old; that type forms, combined with ordinary type for dating, were old; and that type wheels for numbering, (requiring the change of one or more type wheels at every stroke,) combined with type forms for dating and printing, were old. The conclusion of the patent office was, that there was novelty in using the type wheels for dating purposes, in combination with a fixed type form for impressing the name of a post office, or other matter, and a handle; and that this was a substantial improvement, in view of the numerous applications made, and patents granted, subsequently to the date of the Robertson patent, embracing such combination. The use of a handle, for holding the entire apparatus, enables the impression to be made by pressing the handle downward perpendicularly, carrying with it the apparatus, and enables this to be done by the hand, with great facility and rapidity, resulting in having the impressions made on the upper side of the material, thus dispensing with the use of mechanical pressure to press the material down upon the type; and, combined with this, is the facility of changing the date, when required, by turning the type wheels, without moving or shifting the fixed plate, while as many impressions of the same date as are desired can be had, and an impression from fixed type, in connection, can be had at the same time. No apparatus, presenting these combined features, is shown to have existed before the invention of Robertson. The utility, and, hence, the patentability of this new combination, is shown by the extensive demand for, and use of, stamps containing these combined features.

There is no foundation for the claim that the plaintiff abandoned his patent after it

was issued to him. It is shown, that he used every effort within his power to introduce the invention into use, and it is not shown that he ever acquiesced in the infringement of his patent.

It is urged, that the reissued patent is not for the same invention as the original patent, and that there are material variations between the specifications of the two patents. The drawings of the original patent and of the reissue are identical. The description of the construction and arrangement of the apparatus, with the references to the drawings, is the same in the two specifications. The specification of the reissue contains a more full statement than the specification of the original patent did, of the state of the art, of the nature of the improvements developed in the patentee's arrangement, and of the advantages secured by the use of such improvements. This is entirely within the purpose and scope of a reissue.

It is contended, that the specification of the reissue describes a year dating wheel, not found in the specification or drawings of the original patent, and which is found in the defendant's stamp. The drawings, in both patents, show three type wheels, one of which appears to have on it the names of the months, in succession; another, the three figures, 1, 2, 3, in succession; and the third one, the nine figures, 1, 2, 3, 4, 5, 6, 7, 8, and 9, and the cypher, 0, in succession. By the use of the three type wheels, any day of any month can thus be stamped. The specification of the original patent says: "The faces of these type wheels may be provided, respectively, with the names of the months of the year, and also the ten numerals." It also says: "The type wheels and ring may also be engraved with any suitable letters or figures." The specification of the reissue says: "The faces of these type wheels may be provided, respectively, with the names of the months, of the year, and also ten numerals." The document which reads thus is a printed paper, annexed to the reissued patent under the seal of the patent office. It also says: "The type wheels and ring may also be engraved with any suitable letters or figures." In the course of the testimony of one of the witnesses for the defendants, it is stated, that a printed copy of the reissued patent is put in evidence. Such printed copy is then copied in writing, and, in such written copy, the following language is found: "The faces of these type wheels may be provided, respectively, with the names of the months, of the year, and also the ten numerals." It is contended, that the patentee intended, by inserting a comma after the word "months," to introduce into his reissued specification the suggestion, that a type wheel, with a succession of figures upon it for the years, could be used; that the specification of the original patent has no such comma, and no such suggestion; and that therein there is a fraudulent interpolation. This view is not sustainable. There is noth-

ing to show that the interposition of the comma was not an accidental or an arbitrary punctuation; and everything in the context and language shows that it was. Three type wheels, and only three, are shown or described. One has the months on it; and, if another has on it the years, and the third has only the ten numerals, only nine days in any month could ever be represented. There is no suggestion, in this connection, of four wheels, or that the third wheel shall have on it all the days of the month. The expression, "the names of the months of the year," is a sensible expression. The expression, "the names of the year," is a meaningless expression. The fact, that, in all respects, the descriptive part of the specification of the reissue seems to follow the language of the descriptive part of the specification of the original patent, and the further fact, that, in the specification annexed to the original patent, the words, "the ten numerals," are found, while, in the printed specification annexed to the reissued patent under seal, the words are, "ten numerals," and not "the ten numerals," would indicate, that the use of the comma after the word "months," is a clerical error, and purposeless, and improper. There was no need of making any suggestion of the use of a wheel for the years. The use of such a wheel, in the patentee's combination, was obvious, if desired, and was no invention, whether added, as a fourth wheel, or made one of three wheels, by putting all the days of the month on one wheel. The suggestion, in both specifications, that the type wheels could be engraved with any suitable letters or figures, covered the use of one of them for the years. It is well known, that, at the date of Robertson's patent, in 1857, it was not common, in the United States, to put on a post office stamp, for which, from his specification and drawings, his stamp would seem to have been especially designed, the figures of the year, or anything but the name of the month, and the figure or figures of the day of the month, and the name of the post office, as shown in the specification and drawings of the patent. Everything tends to show, that the use of the comma after the word "months," is not one to which any meaning or effect can be attached.

The claims of the reissue are fully warranted by what appears in the text and drawings of the specification of the original patent. It is urged, that the original specification says nothing as to printing "dates," or as to "dating" purposes, and that that is made a prominent feature in the specification and claims of the reissue. But, the original specification states, that, when the stamp is intended for a post office or letter stamp, that is, a stamp to stamp, on a letter in a post office, the name of the post office, and the month and day of the month, the name of the post office is to be on the fixed ring, and the type wheels are to have the names of the months and the numerals which are to make the days of the month;

and that the usefulness of the device consists particularly in the facility of changing the impression to be made by the type wheels, that is, the month and day, which is, the date. The drawings show all this. A month and a day of such month make a date, although no year is added. The addition of the year makes a more full date; and so does the addition of the hour and minute of the day. But the month and day are, in common parlance, a date.

The principal defence set up in this case is, that the improvements claimed by the plaintiff in his reissued patent were previously invented by one Marcus P. Norton, of Troy, New York. So far as regards the contents of a caveat filed in the patent office by said Norton, on the 21st of June, 1855, it is sufficient to say, that the improvements claimed by the plaintiff are not found in that caveat. So far as regards the contents of the paper called "an additional caveat," and purporting to be dated August 21st, 1855, and set up in the answer as having been filed in the patent office on the 25th of August, 1855, in, and with, and as part of, the said caveat filed June 21st, 1855, it is sufficient to say, that, after due notice to said Norton, and a trial had before a commission appointed by the commissioner of patents, the said paper was, in September, 1871, adjudged by the said commission to be fraudulent, and to have been surreptitiously introduced into the caveat file of said Norton, filed June 21st, 1855, and that, thereupon, the commissioner of patents endorsed on said paper a memorandum, signed by him, that said paper does not form a valid portion of said caveat.

There remains the evidence as to the prior existence, in fact, as completed inventions, made by Norton, of the plaintiff's improvements. As to this, the burden of proof is on the defendants, and they do not establish the fact satisfactorily. Norton's own evidence is, manifestly, not to be relied upon. The circumstances attending the taking of his deposition in this suit, the contradictions in sworn statements he has made at different times regarding the alleged caveat, and the manner in which, as shown by the record, he caused witnesses to testify, in ex parte depositions, to matters of which they had no recollection, make it impossible to rely on his testimony.

But, the evidence of Norton, and that of the other witnesses for the defendants, shows nothing done by Norton, prior to the plaintiff's invention, which amounted to more than an unsuccessful experiment. The plaintiff made the first successful, practical working machine.

The infringement of the patent is admitted. There must be a decree for the plaintiff, for a perpetual injunction, and an account of profits, and an ascertainment of damages, with costs.

[For other cases involving this patent, see Robertson v. Hill, Case No. 11,925; Robertson v. Garrett, Id. 11,924.