## ATWOOD *v.* THE PORTLAND COMPANY.

*(Circuit Court, D. Maine.* July 5, 1880.)

1. PATENT—SUIT FOR AN ACCOUNTING.

    A suit in equity for an accounting may be maintained without demanding an injunction.

2. SAME—JURISDICTION—INJUNCTION.

    Circuit courts have " original cognizance, as well in equity as at law, of all actions, suits, and controversies " arising under the patent laws; and their power to grant an injunction is a mere incident.

3. REISSUE—VOID ACTS OF COMMISSIONER.

    In case of a reissue of a patent the patentee may claim something which he had before described as one mode of making his machine or article, when he is informed of its importance. A reissue which was first in time cannot be affected by subsequent void acts of the commissioner.

In Equity. Reissue of patent.

LOWELL, C. J. Anson Atwood brings this bill upon the reissued patent granted him in 1857, No. 468, for a cast-iron car wheel. The original patent was granted in 1847; there was an extension of the reissued patent in 1861; and this suit was brought nearly six years after the end of the extended term; but the statute of limitations is not relied on at this stage of the case.

The defendants contend that a suit in equity cannot be maintained, because no injunction can now be issued, and they consider the account to be a mere incident to the injunction. In my opinion the account is no more incident to the injunction than the reverse. In *Eureka Co.* v. *Bailey Co.* 11 Wall. 488, which was an appeal from my decision, a bill was sustained for an account of royalties due by a contract concerning a patent; but the suit was not a patent suit, and an injunction against the use of the plaintiff's invention was asked and issued as incident to the accounting,—that is to say, until the defendants should pay the royalties. A similar case is *Magic Ruffle Co.* v. *Elm City Co.* 11 O. G. 501, 13 Blatchf. 151, where the bill was sustained for an account under a contract relating to a patent, but without injunction, the patent having expired.

Bills have been upheld and decrees rendered for an account, when the patent had expired during the progress of the cause, in *Jordan* v. *Dobson,* 2 Abb. (U. S.) 398; *Sickles* v. *Gloucester Manuf'g Co.* 1 Fish. 222, 3 Wall. Jr. 196, 4 Blatchf. 229, note; *Imlay* v. *Nor. & Wor. R. Co.* 4 Blatchf. 227; *Neilson* v. *Betts,* L. R. 5 H. of L. 1; *Seymour* v. *Marsh,* 6 Fish. 115, affirmed, 97 U. S. 348. In this last case the point was

not taken, but the fact was an obvious one, and the point was undoubtedly considered untenable.

So where the patent had expired before suit was brought, or the defendant had died before or during suit, and there were no circumstances which authorized an injunction against his executor. *Howes* v. *Nute*, 4 Fish. 263; *American Wood Paper Co.* v. *Glen's Falls Paper Co.* 8 Blatchf. 513; *McComb* v. *Beard,* 10 Blatchf. 350; *Smith* v. *Baker,* 5 O. G. 496; *Atterbury* v. *Gill,* 13 O. G. 276.

In *Draper* v. *Hudson,* 1 Holmes, 208, Judge Shepley refused an account because an injunction could not be granted, but he cited none of the foregoing cases, and evidently overlooked the decision of Mr. Justice Clifford and myself in *Howes* v. *Nute,* 4 Fish. 263. As an authority in this court, therefore, his decision is not binding. It was made upon the supposed authority of *Stevens* v. *Gladding,* 17 How. 447, which, when carefully examined, is found not to decide this point. An injunction having been ordered in that case, an account was given as incident thereto; but it was not, and, under the facts, could not be, decided that an account could never be ordered excepting as incident to an injunction.

The question has lately been revived, and two judges have refused to sustain a bill after the expiration of the patent. *Vaughan* v. *Cent. P. R. Co.* 4 Sawy. 280; *Sayles* v. *Richmond, etc., R. Co.* 11 Chi. Leg. N. 281. Two other judges, one of whom has had very great experience in patent causes, have upheld the equitable jurisdiction. *Vaughan* v. *East Tenn., etc., R. Co.* 9 Chi. Leg. N. 255; 11 O. G. 789; *Gordon* v. *Anthony,* before *Blatchford,* J., April, 1879, an extract from whose judgment has been handed me. 16 Blatchf. 234.

In the absence of a decision by the supreme court, I follow what I consider the preponderance of authority in the circuit courts.

The statute of February 15, 1819, (3 St. 481,) gave to the circuit courts of the United States "original cognizance, as well in equity as at law, of all actions, suits, and controversies" arising under the patent laws. To this broad grant is added an express power to grant injunctions according to the course of courts of equity. This law was re-enacted in the two general acts revising and remodelling the patent law. Statute July 4, 1836, § 17, (5 St. 124;) and July 8, 1870, § 55, (16 St. 206.) This case arises under the law of 1870, and I have therefore no occasion to consider the effect of the provisions of the Revised Statutes upon this subject, though I should be surprised to find that they had changed the law.

I do not see how it is possible to contend that this comprehensive

grant of power can be construed to depend upon the added power to grant injunctions. In the following cases, very able and learned judges have said that the jurisdiction is statutory, and not dependent upon the general rules which govern what we may call customary equity, or have simply said that the plaintiff might elect his remedy. *Nevins* v. *Johnson,* 3 Blatchf. 80; *Sickles* v. *Gloucester Manuf'g Co.* 3 Wall. Jr. 196; *Imlay* v. *Nor. & Wor. R. Co.* 4 Blatchf. 227; *Howes* v. *Nute,* 4 Fish. 263; *Hoffheins* v. *Brandt,* 3 Fish. 218; *Marsh* v. *Seymour,* 97 U. S. 348, 349; *Perry* v. *Corning,* 7 Blatchf. 195; *Cowing* v. *Rumsey,* 8 Blatchf. 36, 38. Add to these the several decisions before cited, and the point seems to be established; for those decisions can hardly rest upon a narrower foundation.

Mr. Justice Grier, one of the first judges to lay down this broad rule, afterwards qualified its generality in certain *dicta;* but he was careful not to decide against the jurisdiction in equity. See *Livingston* v. *Jones,* 3 Wall. Jr. 330, 344; *Sanders* v. *Logan,* 2 Fish. 170; and see Judge McKennan's explanation of these cases in *McMillin* v. *Barclay,* 5 Fish. 189, 194.

A constitutional objection might, perhaps, be raised to the denial of a jury trial in the case of a bill for the mere recovery of a definite sum of money, if the plaintiff clearly required no equitable remedy or assistance whatsoever. That point has not been argued in this or any other case that I know of, and may be left for decision when it shall arise. Such cases must be rare, because the accounting in equity is a peculiar remedy, to which an action at law for damages can very rarely be adequate, unless the plaintiff chooses to consider it so. He may call for an account in equity, and, if that proves unsatisfactory, may add damages in the same suit. This case might rest upon that basis.

In relation to the validity of the reissue the facts are as follows: In his original patent, Atwood described a car wheel cast in one piece, with a solid hub; next the rim was a plate (called by him a ring) made in a succession of radial waves, or corrugations like radii, and this plate was connected with the hub by means of a dished "flanch or flanches," which would yield to the contraction of the metal in the direction of the radii. The patentee supposed that the contraction of the wheel in cooling was principally in a circumferential direction, or across the radii, and the radial waves would yield in this direction. His claim was limited to that form of plate and a flanch or flanches. It was discovered afterwards that the contraction is

principally in the line of the radii. What the patentee called dished flanches, when put together, made an arch; and a wheel cast with an arch next the hub yields readily in the direction of the radii, and a wheel with such an arch for about half the width of the wheel, and a single plate from the arch to the rim, proved to be a better article than any before discovered, and it has not been much improved upon since. Washburn appears to have discovered the merit of a wheel of this kind, and in 1850 he patented one, which he described thus: From each end of the hub two arch-shaped plates project radially outward all around, and join at a point half the semi-diameter of the wheel from the center, or a little beyond it. * * * From the front junction of the two plates there is an extension of a single plate, curved in its radial section, and forming an ogee with the front plate; on the concave face of this extension curved arms or brackets are affixed, perpendicular to the face of the plate, and gradually tapering from the rim to the junction above named of the plates, etc. The claim is for the combination of the arch at the center with the curved plate and arms, connecting the hub and the rim in the manner and for the purpose set forth.

This Washburn wheel went into the general use which it continues to hold in a few years after 1850; certainly as early as 1857. Atwood considered the Washburn wheel to be substantially like his, and reissued his patent in order to obtain what he thought to be the full monopoly of his discovery. His claim is for connecting the wheel with the hub by two curved plates extending from the hub and forming a ring or arch, and joining this ring with the rim by a single plate. Upon the evidence of the drawings in Atwood's original patent, I find that his "dished flanches" made an arch between the hub and the plate to all intents like Washburn's arch, and his single plate in radial waves is the equivalent of a single plate like Washburn's. One of the drawings in Atwood's original patent shows the flanches united and forming an arch. The question, then, is whether Atwood has changed his description, either by inclusion or exclusion, so as to embrace something which he had not invented, or had not described, or indicated in his drawings? The cases of *Gill* v. *Wells*, 22 Wall. 1, and *Russell* v. *Dodge*, 93 U. S. 460, decide that a patentee reissuing his patent has no right to omit something which he had before described as essential. I do not think the converse is true, that he may not claim something which he had described as one mode of making his machine or article. For the thing which he

actually made and exhibited he is to have a patent, though he may have said that an alternative form was equally good. See *Battin* v. *Taggert,* 17 How. 74; *Goodyear* v. *Rubber Co.* 2 Cliff. 351, 9 Wall. 788; *Robertson* v. *Secombe Manuf'g Co.* 10 Blatchf. 481; *Putnam* v. *Yerrington,* 9 O. G. 689; *Stevens* v. *Pritchard,* 10 O. G. 505; *Cornplanter Patent,* 23 Wall. 181; *Herring* v. *Nelson,* 14 Blatchf. 293. Atwood had shown the arch and described its uses, and may afterwards claim it when he is informed of its importance.

It appears that the office issued three new patents upon the surrender of the plaintiff's original patent. Two of them were of a later date than that now in issue, and are not in evidence. The defendant objects that this was *ultra vires;* that the commissioner could only reissue one or more patents immediately upon the surrender. To this the plaintiff's answer is satisfactory, that this reissue, which was the first, cannot be affected by subsequent void acts of the commissioner, supposing them to have been void, which he does not admit, but must stand or fall on its own merits. It is a little like the old case of insurance. A policy was to be void if the assured obtained further insurance without permission; he did this, but the policy he obtained was to be void if there were prior insurance. The latter policy being avoided by the earlier one, that earlier one stood valid. Reported cases inform us that the patent-office often reissues patents in the mode now objected to; and I do not now decide that it has exceeded its authority in doing so.

A very difficult question of fact is raised by the record. Positive testimony is given that a wheel like Atwood's was made by Mr. Baldwin, a well-known worker in iron, at Philadelphia, about 30 years before the testimony was given. The foreman and a pattern maker of Baldwin's shop are asked whether they made a wheel which is described in the question in the words of the plaintiff's claim, and they say they did. This evidence is not and cannot be directly met, but the plaintiff's evidence tends to throw a good deal of doubt upon it indirectly. The turning point in my mind is this: Several suits were brought by Atwood against makers of the Washburn wheel in 1858. Mr. Waterman, a witness in this case, was employed for the defence in one or more of those cases, and then discovered the old Baldwin patterns and cast wheels from them. He says that he considered them a complete answer to the patent, but that Atwood withdrew his actions, as the witness was informed, and so the matter passed out of his mind for many years until this case

revived it. It appears that the defence had very able and diligent counsel, and no doubt the plaintiff was well advised. If the suits were voluntarily withdrawn by the plaintiff 20 years ago, it must probably be that the Baldwin wheel was thought by both sides to be fatal to the Atwood patent. But it seems, from the undisputed testimony of the patentee himself, that all the defendants, in every action which he brought, took licenses from him, and that the same persons, or most of them, vainly opposed the extension of his patent. Waterman, then, was mistaken, if he used the word "withdrawn" in the sense of abandoned. It was the defendants who withdrew. This makes it almost *res judicata*, so far as those parties are concerned, that the Baldwin wheel was not an anticipation of Atwood's, and, in the uncertainty of the evidence which arises from the great lapse of time, has had a controlling influence on my decision. I cannot hold that the parties at the time, and the patent-office afterwards, with all the facts before them, were mistaken. It is more probable that there is some mistake in the evidence now.

The Kinsley wheel appears to have had two arches instead of an arch and a plate—that is, there was a hollow under the tread of the wheels as well as near the hub; and, upon the evidence, there are objections to this form.

Atwood having been the first to make the combination of hub, arch, and plate, has a right to ask for a somewhat liberal construction of his claim, and may include in it the wheel made by the defendants.

Decree for an account.